UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| SIMON GARCIA, REBECCA GARCIA, JOSE CAMPOS, and CHRISTOPHER GARCIA<br><br>Plaintiffs,<br><br>vs.<br><br>SWIFT BEEF COMPANY, MANNY GUERRERO, ASHLEY HENNING, JACOB MONTOYA, and DONNA ESTRADA,<br><br>Defendants. | Case No. 2:20-cv-00263 |

DEFENDANT SWIFT BEEF COMPANY'S
NOTICE OF REMOVAL

Defendant Swift Beef Company ("Swift Beef")[1] files its Notice of Removal ("Notice") to remove this action to the United States District Court for the Northern District of Texas, Amarillo Division, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442, and 1446. Plaintiffs Simon Garcia, Rebecca Garcia, Jose Campos, and Christopher Garcia (collectively, "Plaintiffs") originally filed this action in the 69th Judicial District Court of Moore County, Texas, where the action is currently pending ("State Court Action").

I. **NATURE OF THE ACTION**

1. This is a negligence case filed by Plaintiffs who allege they contracted COVID-19 while working as employees at Swift Beef's meatpacking plant located in Cactus, Texas. [*See generally* Plaintiffs' First Amended Petition ("Am. Pet.") attached hereto as Exhibit ("Ex.") D-12.]

---

[1] Swift Beef Company is incorrectly named in Plaintiffs' First Amended Petition as JBS USA Food Co. dba Swift Beef Company.

2. Plaintiffs specifically allege the following:

(1) upon information and belief, they contracted COVID-19 as a result of their employment with Swift Beef [Am. Pet. ¶¶ 15-18];

(2) Swift Beef "failed to take adequate precautions to protect its employees from COVID-19 risks" [*Id.*. at ¶ 22];

(3) Swift Beef "did not provide masks for its employees until April 2 and did not mandate the use of masks until April 30" [*Id.*];

(4) Swift Beef "had no system of contract [sic] tracing, six-foot spacing modifications, or social distancing barriers on the production line" [*Id.*];

(5) Swift Beef "required its employees to come to work without sufficient protection, despite the well-known risks of COVID-19" [*Id.*]; and

(6) Swift Beef's "conduct, effectuated through the named Defendants in this lawsuit, was negligent and grossly negligent and was the cause of the underlying incidents and injuries." [*Id.* at ¶ 26.]

3. Plaintiffs allege Defendants owed a legal duty to Plaintiffs to provide a safe work environment and breached that duty by:

(1) "Requiring Plaintiffs to continue working at the meatpacking plant when it was no longer safe to do so due to COVID-19";

(2) "Failed to provide adequate PPE [Personal Protective Equipment] to the workers at the meatpacking plant";

(3) "Failed to implement adequate precautions and social distancing at the meatpacking plant";

(4) "Failed to follow guidelines set forth by the World Health Organization ('WHO') and Center for Disease Control ('CDC') with regard to COVID-19 at the meatpacking plant";

(5) "Failed to warn of the dangerous conditions at the meatpacking [sic] regarding COVID-19";

(6) "Failure to properly train JBS employees at the meatpacking plant";

(7) "Failure to provide adequate medical treatment"; and

(8) "Allowed and required individuals who were infected with COVID-19 to continue to work at the meatpacking plant infecting other individuals."

[Am. Pet. ¶¶ 28-29.]

## II.   REMOVAL IS TIMELY

4. On November 5, 2020, Plaintiffs filed their First Amended Petition ("Amended Petition") in the State Court Action styled *Simon Garcia, Rebecca Garcia, Jose Campos, and Christopher Garcia v. Manny Guerrero, Ashley Henning, Sandy Dean, Jacob Montoya, and Donna Estrada*, Cause No. 20-61.[2] [*See* Am. Pet.]

5. Because Swift Beef is represented by the same counsel who represents the other Defendants in the State Court Action, it received the Amended Petition that same day.

6. Swift Beef's removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

7. Pursuant to 28 U.S.C. § 1446(a), a copy of the Amended Petition and all process and pleadings served in the State Court Action are attached to this Notice as Exhibit "D."

8. Plaintiffs made a jury demand in the State Court Action. [Am. Pet. ¶ 35.]

---

[2] Though Plaintiffs did not include Swift Beef in the case style, they did, for the first time, name Swift Beef as a Defendant in the Amended Petition. [*See* Am. Pet. ¶ 10.] Further, though individual Sandy Dean is included in the case style, Plaintiffs nonsuited her on August 8, 2020. [*See* August 10, 2020 Plaintiffs' Notice of Non-Suit Without Prejudice as to Defendant Sandy Dean attached hereto as Exhibit D-4.]

### III.    CONSENT IS NOT NECESSARY BUT HAS BEEN OBTAINED

9.    Consent of Defendants Manny Guerrero, Ashley Henning, Jacob Montoya, and Donna Estrada (collectively, the "Individual Defendants") is not needed because they should be disregarded based on the doctrine of fraudulent joinder. *Rico v. Flores,* 481 F.3d 234, 239 (5th Cir. 2007). The Individual Defendants nevertheless consent to removal.

### IV.    REMOVAL IS PROPER

10.    Removal is proper under 28 U.S.C. § 1331 because this action arises under the Constitution, laws, or treaties of the United States.

11.    Additionally, removal is proper under 28 U.S.C. § 1442 because Plaintiffs' Amended Petition challenges actions taken by Swift Beef at the direction of a federal officer, for which Swift Beef will have a colorable federal defense.

12.    Removal is also proper pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs and Swift Beef, and the amount-in-controversy exceeds $75,000.00.

13.    Each basis for jurisdiction will be addressed in turn.

**A.**    **Federal Question Jurisdiction Exists Over This Dispute.**

14.    This Court has federal question jurisdiction under 28 U.S.C. § 1331 and *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Plaintiffs' state-law claims "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 313–14).

15. One essential question is embedded in Plaintiffs' claims: In the midst of a presidentially declared national emergency, how must America's meat processing facilities balance the interests of safeguarding workplace health and safety with their ongoing obligation to feed the American people?  Any duty ascribed to Swift Beef unavoidably implicates President Trump's explicit directive regarding the safe operation of meat processing facilities during the pandemic, as well as federal policies governing the nation's food supply, national security, and economy.  *See* Exec. Order No. 13917, "Delegating Authority Under the Defense Production Act With Respect to Food Supply Chain Resources During the National Emergency Caused by the Outbreak of COVID-19," 85 Fed. Reg. 26313 (Apr. 28, 2020) ("Food Supply Chain Order") (invoking authority under the Defense Production Act, 50 U.S.C. § 4501 *et seq.*).  All four of the *Grable* factors are satisfied here because the remedy Plaintiffs seek threatens to interfere with federal policies over matters of uniquely national importance.

      i.    **Plaintiffs' Claims Necessarily Raise a Federal Issue.**

16. The Supreme Court has "recognized for [more than] 100 years that in certain cases federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312.  Federal question jurisdiction may arise from an issue "embedded" in state-law claims and does not require an asserted statutory violation.  *See id.* at 316–19.

17. The exercise of jurisdiction is warranted in a variety of contexts where the application of state law may interfere with a federal interest in "getting the Government's work done."  *See Boyle v. United Techs. Corp.*, 487 U.S. 500, 505, 509 (1988).  In keeping with this principle, courts have recognized such supervening federal interests in an array of cases, including

those that concern the design and procurement of military equipment,[3] responding to national emergencies,[4] and ensuring the integrity of interstate waterways.[5]

18. The Food Supply Chain Order dispels any doubt that a unique federal interest is implicated here. Swift Beef supplies "a scarce and critical material essential to the national defense," as defined by the Defense Production Act of 1950. *See* 85 Fed. Reg. 26313, 26313 (meat and poultry suppliers constitute "critical infrastructure during the national [COVID-19] emergency"). Indeed, Plaintiffs *concede* that Swift Beef is a "beef meatpacking plant." [Am. Pet. ¶ 15.]

19. Plaintiffs seek to impose liability based on Swift Beef's alleged failure to mitigate the risk of COVID-19 transmission at a meat processing plant—precisely the conduct governed by the Food Supply Chain Order. [*Compare id.* ¶ 22 ("Prior to April 2, 2020 and after April 2, 2020, [Swift Beef] failed to take adequate precautions to protect its employees from COVID-19 risks."), *with* 85 Fed. Reg. 26313, 26313 (ordering meat processors "continue operations consistent with the guidance for operations jointly issued by the CDC and OSHA" in light of the "dramatic toll" taken by "necessary mitigation measures").]

20. Thus, a state court's application of any standard of conduct on a meat processing facility contrary to that imposed by the federal government may compromise a unique federal interest and frustrate the government's capacity to impose a uniform rule. *Cf. Rural Cmty. Workers*

---

[3] *See Boyle*, 487 U.S. at 505, 509 (finding a "uniquely federal interest" in contracts for military helicopters); *see also Scrogin v. Rolls-Royce Corp.*, No. 3:10-CV-442, 2010 WL 3547706, at *3 (D. Conn. Aug. 16, 2010) (denying motion to remand under *Grable* where military helicopters contract implicated a "uniquely federal interest"); *McMahon v. Pres. Airways, Inc.*, 410 F. Supp. 2d 1189 (M.D. Fla 2006).

[4] *See In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d 169, 197 (2d Cir. 2008) (extending *Boyle*'s rationale "to the disaster relief context due to the unique federal interest in coordinating federal disaster assistance and streamlining the management of large-scale disaster recovery projects").

[5] *Illinois v. City of Milwaukee*, 406 U.S. 91, 105 (1972) (pollution in interstate streams).

*All. v. Smithfield Foods, Inc.*, No. 5:20-cv-06063, 2020 WL 2145350, at *8 (W.D. Mo. May 5, 2020) (recognizing that referring a plaintiff's tort claims against a meat processing plant to OSHA is necessary to "ensure uniform national enforcement of the Joint [CDC and OSHA] Guidance").

### ii.     The Federal Issues Are Actually Disputed.

21.     In addition to identifying the "*presence* of a federal issue," the proponent of federal jurisdiction must also demonstrate "an actual disagreement about an interpretation of federal law that is material to the claims at issue." *See Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 813 (1986) (emphasis added). Plaintiffs' claims include allegations that contradict federal policy or regulations. Accordingly, they necessarily raise a disputed federal issue which warrants the exercise of federal question jurisdiction. *See McKay v. City & Cty. of San Francisco*, No. 16-CV-03561, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016); *Bader Farms, Inc. v. Monsanto Co.*, 2017 WL 633815, at *3 (E.D. Mo. Feb. 16, 2017).

22.     Plaintiffs' claims are directly opposed to the federal government's actions and directives. For example, Plaintiffs allege Swift Beef was negligent for having its employees work so the plant could remain operational. [Am. Pet. ¶ 21 ("In Texas, Governor Abbott issues a stay-at-home order that took effect on April 2, 2020 … [s]till, Plaintiffs were required to work until they showed symptoms and were, eventually, quarantined and tested.").] In contrast, *The President's Coronavirus Guidelines for America* issued on March 16, 2020 ("President's Coronavirus Guidelines"), implored "[i]f you work in the critical infrastructure industry … such as … food supply, you have a special responsibility to maintain your normal work schedule."[6] And the Food Supply Chain Order enjoins meat processing facilities to remain open. 85 Fed. Reg. 26313, 26313 ("It is important that processors of beef, pork, and poultry … in the food supply

---

[6] https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last visited November 9, 2020).

chain continue operating and fulfilling orders to ensure a supply of protein for Americans."); *id.* (ordering the Secretary of Agriculture to "take all appropriate actions … to ensure that meat and poultry processors continue operations").

23. In addition, Plaintiffs' Amended Petition invokes serial CDC and OSHA guidelines. Plaintiffs assert that Defendants failed to follow the March 2020 guidelines (*see* Am. Pet. ¶¶ 20, 23), but then seeks to impose liability based on an April 2020 guidance that contains different instructions. [*Id.* at ¶¶ 22, 29.] Plaintiffs' reliance on conflicting guidance separately supports the exercise of *Grable* federal question jurisdiction because this Court will need to reconcile the applicable federal standards. *See Scott v. Lance Aviation, Inc.*, No. 8:09-CV-986, 2010 WL 11507789, at *3 (M.D. Fla. Mar. 10, 2010) (denying remand because the court was required to determine what, if any, federal regulations applied and what conduct they required, whether a predecessor set of regulations controlled, "or how the provisions of the CARs and FARs can be reconciled with one another as they relate to [Defendant's] duty").

### iii. There is a Substantial Federal Issue.

24. A federal issue is "substantial" if it "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. The Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine 'the development of a uniform body of [federal] law.'" *Grable*, 569 U.S. at 260–61 (citation omitted).

25. The Food Supply Chain Order explicitly confirms a substantial federal interest in creating a uniform standard of conduct for the meat processing industry during the national emergency, in light of an emerging patchwork of contradictory state rules. *See* 85 Fed. Reg. 26313 (federal authority invoked because reductions in processing capacity and/or state actions that have

led to the closure of some facilities "may differ from or be inconsistent with interim guidance recently issued"); *see also Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 724 (5th Cir. 2017) ("the case affects 'an entire industry' rather than a few parties").

### iv. This Court's Determination Will Not Disturb the Balance of State and Federal Judicial Responsibilities.

26. Finally, courts must consider whether the exercise of federal question jurisdiction under *Grable* would "materially affect, or threaten to affect, the normal currents of litigation," such that a "flood of cases" would result on the federal docket. *See Grable*, 545 U.S. at 319; *Clauer v. Heritage Lake Homeowners Ass'n, Inc.*, No. 4:09-cv-560, 2010 WL 446545 at *4 (E.D. Tex. Feb. 3, 2010). The narrowly rendered directive in the Food Supply Chain Order, limited to just meat and poultry business practices during the COVID-19 pandemic, allays concern about a "flood of cases" and weighs in favor of jurisdiction. Accordingly, this Court's determination of the substantial and disputed federal issues at the heart of this case would not "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314.

### B. Swift Beef Acted Under the Direction of a Federal Officer.

Under 28 U.S.C. § 1442(a)(1), a civil action may be removed to federal court if the action is asserted against a person acting under the direction of a federal officer:

> A civil action . . . that is against or directed to any of the following may be removed by them . . . :
>
> (1)   The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . .

28 U.S.C. § 1442(a)(1) (emphasis added).

Here, federal officer removal is proper because (1) Swift Beef "is a 'person' within the meaning of the statute," (2) Swift Beef "has acted pursuant to a federal officer's directions," (3) "the charged conduct is connected or associated with an act pursuant to a federal officer's directions[,]" and (4) Swift Beef "has asserted a colorable federal defense[.]" *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc).[7]

**Swift Beef is a "person."**  Swift Beef is a "person" under 28 U.S.C. § 1442 because the term includes both "private persons and corporate entities." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 461 (5th Cir. 2016), *overruled on other grounds by*, *Latiolais*, 951 F.3d 286 (citations omitted).

**Federal Direction**.  On March 13, 2020, the President declared "a National Emergency in response to the COVID-19 outbreak." Exec. Office of Pres., *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Out-break*, 85 Fed. Reg. 15,337, 15,337, 2020 WL 1227639 (Mar. 13, 2020).  Soon after, on March 16, the President issued "Coronavirus Guidelines" emphasizing that employees in "critical infrastructure industr[ies]"—including companies like Swift Beef that are essential to maintaining food-supply chains and ensuring the continued health and safety of all Americans—have a "special responsibility to maintain [their] normal work schedule." Exec. Office of Pres., *The President's Coronavirus Guidelines for America* at 2 (Mar. 16, 2020).[8]  On March 25, President Trump approved a major disaster

---

[7] Because Swift Beef is entitled to remove this case under 28 U.S.C. § 1442(a)(1), "the entire case [is] deemed removable, such that [Plaintiffs'] claims against all other defendants . . . will be heard in federal court as well." *Morgan* v. *Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018); *see also* Wright & Miller, 14C Fed. Prac. & Proc. § 3726 (Rev. 4th ed.) ("Because Section 1442(a)(1) authorizes removal of the entire action even if only one of the controversies it raises involves a federal officer or agency, the section creates a species of statutorily-mandated supplemental subject-matter jurisdiction.").

[8] https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf (last visited November 10, 2020).

declaration for the State of Texas in response to the COVID-19 outbreak. Exec. Office of Pres., *President Donald J. Trump Approves Texas Disaster Declaration* (Mar. 25, 2020).[9]

On April 28, consistent with the directions in March and because of attempts by localities to countermand federal directions, President Trump issued an executive order. This time expressly invoking his authority under the Defense Production Act ("DPA"), 50 U.S.C. §§ 4501 *et seq.*, the President again instructed Swift Beef and other meat and poultry processing companies to stay open and continue operations, subject to the supervision of the Secretary of Agriculture. *See Food Supply Chain Resources*, 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1. The executive order states in relevant part:

> It is important that processors of beef, pork, and poultry ("meat and poultry") in the food supply chain **continue operating and fulfilling orders** to ensure a continued supply of protein for Americans. [R]ecent actions in some States have led to the complete closure of some large processing facilities.
>
> \*       \*       \*
>
> Such closures **threaten the continued functioning** of the national meat and poultry supply chain, undermining critical infra-structure during the national emergency.
>
> \*       \*       \*
>
> [T]he Secretary of Agriculture shall take all appropriate action . . . to **ensure that meat and poultry processors continue operations** consistent with the guidance for their operations jointly issued by the CDC and OSHA.

*Id.* (emphases added).

---

[9] https://www.whitehouse.gov/briefings-statements/president-donald-j-trump-approves-texas-disaster-declaration-6/#:%7E:text=Today%2C%20President%20Donald%20J.,20%2C%202020%2C%20and%20continuing (last visited November 10, 2020).

Consistent with the *Food Supply Chain Resources* executive order, the U.S. Secretary of Agriculture Sonny Perdue then promptly issued two letters: one to meat and poultry processors directing them how to proceed, and one to state and local officials across the nation informing them of the Secretary's actions and their obligation to work with the Secretary to ensure meat processing companies' compliance with the Secretary's directives. *See* U.S. Dep't of Agriculture, Press Release No. 0243.20 (May 6, 2020) (announcing that the Secretary had issued a "Letter to Governors" and "Letter to Stakeholders"). Secretary Perdue's Letter to Stakeholders emphasized that the "Nation's meat and poultry processing facilities and workers play an integral role in the continuity of our food supply chain." U.S. Dep't of Agriculture, Letter to Stakeholders (May 5, 2020).[10]  And, relevant here, Secretary Perdue's Letter to Governors states:

> Effective immediately, **I have directed meat and poultry processors to utilize the guidance** issued on Sunday, April 26, 2020, by CDC and OSHA specific to the meat and poultry processing industry to implement practices and protocols for staying operational or resuming operations while safeguarding the health of the workers and the community.
>
> \*   \*   \*
>
> The U.S. Department of Agriculture (USDA) has also **directed meat and poultry processing plants** currently closed and without a clear timetable for near-term reopening to submit to USDA written documentation of their protocol, developed based on the CDC/OSHA guidance, and **resume operations as soon as they are able** after implementing the CDC/OSHA guidance for the protection of workers.

U.S. Dep't of Agriculture, Letter to Governors (May 5, 2020) (emphases added)[11]; *see also* U.S. Dep't of Agriculture, Letter to Stakeholders (May 5, 2020).

---

[10] https://www.usda.gov/sites/default/files/documents/stakeholder-letters-covid.pdf (last visited November 10, 2020).

[11] https://www.usda.gov/sites/default/files/documents/governor-letters-covid.pdf (last visited November 10, 2020).

The U.S. Department of Agriculture also entered into a Memorandum of Understanding with the U.S. Food and Drug Administration ("FDA") setting forth the respective roles of each agency in utilizing the DPA to regulate food producers during the COVID-19 outbreak. *See Memorandum of Understanding Between FDA and USDA Regarding the Potential Use of the Defense Production Act with Regard to FDA-Regulated Food During the COVID-19 Pandemic* (May 18, 2020).[12] Notably, the agreement reiterated that "actions by States or localities could lead to the closure of food resource facilities"; such closures "could threaten the continued functioning of the national food supply chain, undermining critical infrastructure during the national emergency"; and the Department of Agriculture retained "*exclusive delegated authority*" under the DPA to issue orders regarding domestic food producers. *Id.* at 1–2, 4 (emphasis added).

Accordingly, Swift Beef's facilities—including its Cactus meatpacking plant—were operating as critical infrastructure of the United States that had been instructed by the President to continue operations both before and after the *Food Supply Chain Resources* executive order and the Secretary of Agriculture's related orders. As such, Swift Beef was "acting under the direction of a federal officer," 28 U.S.C. § 1442(a)(1), and "helping the Government to produce an item that it needs" for the national defense under the DPA, *Watson* v. *Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007); *see also Camacho* v. *Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989) (holding that "the reach of section 1442(a)(1) extends to private persons . . . who act under the direction of federal officers," including companies ordered to "facilitate" or "offe[r] technical assistance" to federal agents exercising statutory authority).

Consistent with the finding of federal officer removal in *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387 (5th Cir. 1998), the federal government here (1) provided "detailed

---

[12] https://www.usda.gov/sites/default/files/documents/mou-between-fda-usda-dpa.pdf (last visited November 10, 2020).

specifications" governing Swift Beef's ongoing operations—through the President's direction that the CDC and OSHA guidelines would govern those operations, and promulgation of exceedingly detailed guidelines specific to meat and poultry processors by the CDC and OSHA—and (2) exercised "ongoing supervision" of those operations through the Secretary of Agriculture, who was delegated power by the President to "take all appropriate action . . . to ensure that meat and poultry processors continue operations consistent with the guidance for their operations jointly issued by the CDC and OSHA." 85 Fed. Reg. at 26,313, 2020 WL 2060381, at *1.

Plaintiffs' Amended Petition challenges Swift Beef's decision to continue allowing employees to work at the Cactus plaint and the various measures that were taken at the facility. [*See, e.g.*, Am. Pet. ¶¶ 21 ("In Texas, Governor Abbott issued a stay-at-home order that took effect on April 2, 2020. . . . Still, Plaintiffs were required to work until they showed symptoms and were, eventually, quarantined and tested."), 29 (alleging that Swift Beef failed to "provide adequate PPE," "implement adequate precautions," and "follow guidelines set forth by the [WHO] and [CDC]").]  But those alleged actions were taken pursuant to the authority, orders, detailed regulation, and supervision of the President and Secretary of Agriculture under the DPA.  Swift Beef was therefore "acting under" federal officers, and is therefore entitled to have this case heard in federal court. 28 U.S.C. § 1442(a)(1).

**Connection or Association**. There is a direct connection between the Amended Petition's allegations and the actions Swift Beef took at the direction of the President and Secretary of Agriculture. As noted above, the Amended Petition alleges that Swift Beef is liable in tort for adopting or allegedly failing to adopt specific measures in response to the coronavirus. [*See, e.g.*, Am. Pet. ¶¶ 21, 29(a)–(i).] But the measures that Swift Beef took were implemented at the express direction of federal officers.  And any dispute about the scope of Swift Beef's authority to

implement those measures under the federal directives "is one for the federal—not state—courts to answer." *Isaacson* v. *Dow Chem. Co.*, 517 F.3d 129, 138 (2d Cir. 2008) (federal courts must resolve "whether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government") (citing *Willingham* v. *Morgan*, 395 U.S. 402, 409 (1969)).  Likewise, the Amended Petition implicitly challenges Swift Beef's decision to continue operating its Cactus plant *at all*, (¶¶ 21-22, 29(b)), even though federal officers directed Swift Beef to continue operations and emphasized that meat-processing "facilities and workers play an integral role in the continuity of our food supply chain." U.S. Dep't of Agriculture, Letter to Stakeholders (May 5, 2020).  Thus, the Amended Petition's allegations are "connected or associated with" Swift Beef's actions taken "pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296.

**Colorable Federal Defenses**. Swift Beef has at least the following federal defenses to the claims in the Amended Petition.

- **Express preemption under the Federal Meat Inspection Act ("FMIA").**  The FMIA express preemption clause preempts state-law requirements that are "in addition to" or "different from" the rigorous and extensive federal requirements under the MIPA. *Nat'l Meat Ass'n* v. *Harris*, 565 U.S. 452, 459-60 (2012) (noting that the FMIA "sweeps widely" and "prevents a State from imposing any additional or different—even if non-conflicting—requirements that fall within the scope of the Act and concern a slaughterhouse's facilities or operations.").  Plaintiffs here would use state tort law to impermissibly impose additional and different requirements.

- **Preemption under the DPA and the Executive Order.** Plaintiffs' claims are also preempted by the DPA and the President's *Food Supply Chain Resources* executive order

and related federal directions. Congress enacted the DPA to preserve "the security of the United States" by ensuring "the ability of the domestic industrial base to supply materials and services for the national defense and to prepare for and respond to . . . natural or man-caused disasters." 50 U.S.C. § 4502(a)(1).  The DPA grants the President wide latitude to "take appropriate steps" to maintain and enhance the "domestic critical infrastructure" threatened by "emergency conditions." *Id.* §§ 4502(a)(2)(C), (4). This broad grant of authority preempts any attempt by a state to impose its own regulations on "domestic critical infrastructure" industries when the President has done so under the DPA, 50 U.S.C. § 4502(a)(2)(C); *see also Crosby* v. *Nat'l Foreign Trade Council*, 530 U.S. 363, 376 (2000), and provides defenses against suits like this for actions taken in compliance with orders issued under the DPA. The Petition here seeks to impose state regulation that conflicts with the President's express directives under the DPA requiring Swift Beef to assist the nation during a national disaster by (1) continuing to operate (2) pursuant to federal operational requirements.

C. **Complete Diversity Exists and the Amount-In-Controversy Exceeds $75,000.00.**

27. Plaintiff Simon Garcia is a citizen of Texas.  [Am. Pet. ¶ 6.]

28. Plaintiff Rebecca Garcia is a citizen of Texas. [*Id.* ¶ 7.]

29. Plaintiff Jose Campos is a citizen of Texas. [*Id.* ¶ 8.]

30. Plaintiff Christopher Garcia is a citizen of Texas. [*Id.* ¶ 9.]

31. Defendant Swift Beef is a citizen of both Delaware and Colorado because (a) it is a Delaware corporation and (b) its principal place of business is located in Greeley, Colorado. [*Id.* ¶ 10 (Plaintiffs admit that Swift Beef is a foreign corporation).]

32. If liability is imposed and damages are awarded in this case (which is contested), Plaintiffs allege they are seeking "damages in excess of $1,000,000." [*Id.* ¶ 36.]

**D.      Plaintiffs Fraudulently Joined the Individual Defendants.**

33. The doctrine of fraudulent joinder is an exception to the requirement that removal under 28 U.S.C. § 1332 be predicated solely upon complete diversity. *See Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 311 (5th Cir. 2002).

34. Under this doctrine, diverse defendants may remove an action if the plaintiff cannot establish a claim under state law against the non-diverse defendants. *Id.*

35. To defeat fraudulent joinder there must be a reasonable possibility—not merely a theoretical possibility—that the plaintiff will be able to establish a cause of action against the in-state defendant in state court. *See id.* at 312.

   **i.      The Individual Defendants have no duty to provide Plaintiffs with a safe workplace under Texas law.**

36. Plaintiffs allege the Individual Defendants—who are Plaintiffs' co-workers and not their employer—committed negligence and gross negligence because they "failed to fulfill their duty to provide a safe working environment to Plaintiffs." [Am. Pet. ¶ 23.]

37. Binding Texas Supreme Court precedence establishes that the Individual Defendants do not have a duty to provide a safe workplace and cannot be held liable for Swift Beef's alleged failure to provide a safe workplace to Plaintiffs. *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996) (holding the duty to provide a safe workplace is a non-delegable duty belonging solely to an employer).

38. Because the Individual Defendants cannot be held liable for Swift Beef's alleged failure to provide a safe workplace to Plaintiffs, Plaintiffs' claims against the Individual Defendants have no basis under Texas law.

      ii.      **Plaintiffs did not plead that the Individual Defendants owe them a recognized duty of care separate and independent from the nondelegable duty owed solely by their employer Swift Beef.**

39.      In their Amended Petition, Plaintiffs do not assert any recognizable individual duty allegedly owed by the Individual Defendants that is separate and independent from the nondelegable duty owed by Plaintiffs' employer Swift Beef.  [*See, generally,* Am. Pet.]

40.      Under Texas law, a corporate officer or agent can be liable to others for his or her own negligence under certain circumstances, but that "individual liability arises only when the officer or agent owes an *independent duty* of reasonable care to the injured party *apart from the employer's duty*." *Leitch*, 935 S.W.2d at 117 (emphasis added).

41.      Because Plaintiffs have not pled a recognizable duty of care allegedly owed by the Individual Defendants that is separate and independent from the nondelegable duty owed by Plaintiffs' employer Swift Beef, Plaintiffs' claims against the Individual Defendants have no basis under Texas law.

### V.    PROCEDURE FOR REMOVAL HAS BEEN SATISFIED

42.      Venue is proper in this district under 28 U.S.C. §§ 124(a) and 1441(a) because the United States District Court for the Northern District of Texas, Amarillo Division, serves Moore County, Texas where the State Court Action is now pending.

43.      Swift Beef is filing a civil cover sheet and a supplemental civil cover sheet concurrent with this Notice of Removal pursuant to Local Rules 81.1(a)(1) and (2).

44.      Attached hereto as Exhibit D are (a) an index of all documents that clearly identify each document and the date they were filed in the State Court Action, (b) a copy of the docket sheet in the State Court Action, and (c) a copy of each document filed in the State Court Action pursuant to Local Rule 81.1(a)(4)(A)-(C) and 28 U.S.C. § 1446(a).

45. Attached hereto as Exhibit C is a separately signed certificate of interested persons pursuant to Local Rule 81.1(a)(4)(D).

46. Pursuant to 28 U.S.C. § 1446(d), Swift Beef will provide written notice of this filing to Plaintiffs and will file a copy of this Notice Removal with the court clerk in Moore County, Texas where this suit has been pending.

## VI.     CONCLUSION

47. As demonstrated herein, this Court would have had original jurisdiction of this matter under 28 U.S.C. §§ 1331, 1442 and/or 1332.

48. Removal of this dispute to this Court is proper because federal question jurisdiction exists based on the Amended Petition's allegations and controlling law demonstrating that Plaintiffs' claims arise under the Constitution, laws, or treaties of the United States.

49. Removal of this dispute to this Court is also proper because Plaintiffs' Amended Petition challenges actions taken by Swift Beef at the direction of a federal officer, for which Swift Beef will have a colorable federal defense.

50. Additionally, diversity jurisdiction exists because there is complete diversity of citizenship between Plaintiffs and the properly named Defendant, and the amount-in-controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. The Court should exclude from consideration Plaintiffs' fraudulent joinder of Defendants Manny Guerrero, Ashley Henning, Jacob Montoya, and Donna Estrada because Texas law bars Plaintiffs' claims against these individuals.

51. Finally, to the extent that the above bases for federal jurisdiction do not extend to one or more of Plaintiffs' claims, this Court has supplemental jurisdiction over such claim or claims pursuant to 28 U.S.C. § 1367.

Respectfully submitted,

*/s/ Alexander Brauer*
Alexander Brauer
Texas State Bar No. 24038780
abrauer@baileybrauer.com
Clayton E. Bailey
Texas State Bar No. 00796151
cbailey@baileybrauer.com
Benjamin L. Stewart
Texas State Bar No. 24046917
bstewart@baileybrauer.com
Adam Bell
Texas State Bar No. 24101500
abell@baileybrauer.com

**BAILEY BRAUER PLLC**
Campbell Centre I
8350 N. Central Expressway, Ste. 650
Dallas, Texas 75206
Telephone: (214) 360-7433
Facsimile: (214) 360-7435

-and-

Matt W. Sherwood
State Bar No. 24066063
msherwood@bf-law.com

**BROWN & FORTUNATO, P.C.**
905 S. Fillmore, Suite 400
Amarillo, TX 79101
Telephone: (806) 345-6300
Facsimile: (806) 345-6363

**ATTORNEYS FOR DEFENDANT SWIFT BEEF COMPANY**

## CERTIFICATE OF SERVICE

On November 11, 2020, I filed this Notice of Removal with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel of record by a manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Alexander Brauer*
Alexander Brauer