IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| Simon Garcia, Rebecca Garcia, | § | |
| Jose Campos, and Christopher Garcia | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 2:20-CV-00263-Z |
| JBS USA Food Co. dba Swift Beef Company, | § | |
| Manny Guerrero, Ashley Henning, Jacob | § | |
| Montoya, and Donna Estrada | § | |
| | § | |
| *Defendants* | § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANT
SWIFT BEEF COMPANY'S MOTION TO DISMISS**

---

For the reasons set forth below, the Court should deny Defendant JBS USA Food Co. dba

Swift Beef Company's motion to dismiss.

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ I

TABLE OF AUTHORITIES .......................................................................... II

STATEMENT OF THE ISSUES .......................................................................1

SUMMARY OF THE ARGUMENT ...................................................................1

FACTUAL BACKGROUND ...........................................................................2

LEGAL STANDARD ...................................................................................4

ARGUMENT ...........................................................................................5

1.   This Court should address Plaintiffs' motion to remand first before entertaining Defendant's motion to dismiss.................................................................5

2.   Plaintiffs' petition alleges claims that are plausible on their face and establish Plaintiffs' negligence and gross negligence claims. ..................................................6

    a. Swift Beef owed Plaintiffs a duty to provide a safe workplace and to implement policies and procedures that would have minimized the risk of the virus. .......................................................................6

    b. Plaintiffs have provided facts that show Swift Beef's actions led to Plaintiffs' injuries. .................................................................9

    c. Plaintiffs have viable claims for gross negligence. ...................................12

3.   The FMIA does not preempt Plaintiffs' state law negligence and gross negligence claims.................................................................................14

4.   The executive order does not justify preemption. ...........................................17

5.   Swift Beef's primary jurisdiction arguments do not apply to this case. ...........19

6.   In the event that the Court finds that Swift Beef's motion has merit as to any of Plaintiffs' claims, Plaintiffs ask for leave to amend their petition to cure any alleged deficiencies. .................................................................................20

### TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 5

*Ass'n des Èleveurs de Canards et d'Oies de Quebec v. Becerra*, 870 F.3d 1140 (9th Cir. 2017) ............................................................................................................................ 16

*Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996) .................................................................. 5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................... 4

*Borjean v. Rodriguez*, 436 S.W.3d 307 (Tex. 2014) ...................................................... 13

*Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30 (Tex. App.—Houston [1st Dist.] 2004, pet. denied), supplemented (Feb. 17, 2005) ...................................................................... 9

*Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124 (S.D. Cal. 2017) ....................... 16

*Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497  (Tex. 1995) .................................. 9

*Campbell v. Wells Fargo Bank*, 781 F.2d 440 (5th Cir. 1986) ....................................... 5

*Cartwright v. Pfizer, Inc.*, 369 F. Supp. 2d 876 (E.D. Tex. 2005) ................................ 14

*Cash Am. Intern. Inc. v. Bennett*, 35 S.W.3d 12 (Tex. 2000) ........................................ 19

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005) .................................................. 13

*Coastal Tankships U.S.A., Inc. v. Anderson*, 87 S.W.3d 591 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) .................................................................................................... 9

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496 (5th Cir. 2000) ........................ 4

*Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1064 (E.D. Cal. 2013) ...................... 16

*Drayton v. Pilgrim's Pride Corp.*, CIV.A. 03-2334, 2004 WL 765123 (E.D. Pa. Mar. 31, 2004) ............................................................................................................................... 17

*English v. General Elec. Co.*, 496 U.S. 72 (1990)................................................................ 14

*Figueroa v. Davis*, 318 S.W.3d 53 (Tex. App.—Houston [1st Dist.] 2010, no pet.).............. 9

*Foree v. Crown Cent. Petroleum Corp.*, 431 S.W.2d 312 (Tex. 1968).................................. 19

*Gonzalez v. Kay*, 577 F.3d 600 (5th Cir. 2009) ..................................................................... 4

*Greater Houston Transp. v. Phillips*, 801 S.W.2d 523 (Tex. 1990)........................................ 7

*Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993 (2nd Cir. 1985), *aff'd sum nom. Gerace*

    *v. Grocery Manufacturers of Am., Inc.*, 474 U.S. 801 (1985) ........................................... 17

*Guevara v. Ferrer*, 247 S.W.3d 662 (Tex. 2007) ................................................................... 9

*Harris v. Coastal Offshore, Inc.*, CIV.A. C-11-58, 2011 WL 2457922 (S.D. Tex. June 16,

    2011) ............................................................................................................................... 5

*Heaton v. Monogram Credit Card Bank of Ga.*, 231 F.3d 994 (5th Cir. 2000) ...................... 6

*Hoppenstein v. Ruckel*, 4:14-CV-467, 2015 WL 294295  (E.D. Tex. Jan. 22, 2015) ............. 5

*KIW, Inc. v. Zurich Am. Ins. Co.*, CIV.A. H-05-3240, 2005 WL 3434977 (S.D. Tex. Dec. 14,

    2005) ............................................................................................................................... 6

*Kraft Foods N. Am., Inc. v. Rockland County Dep't of Weights & Measures*, 01 CIV. 6980

    (WHP), 2003 WL 554796 (S.D.N.Y. Feb. 26, 2003) ...................................................... 17

*Kroger Co. v. Elwood*, 197 S.W.3d 793 (Tex. 2006) .............................................................. 7

*Lahman v. Cape Fox Corp.*, 4:17-CV-00305, 2018 WL 4205424 (E.D. Tex. Sept. 4, 2018). 4,

    12

*Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778 (Tex. 2001) ........................................... 13

*Lockett v. HB Zachry Co.*, 285 S.W.3d 63 (Tex. App.—Houston [1st Dist.] 2009, no pet.) . 13

*Meaunrit v. The Pinnacle Foods Group, LLC*, C 09-4555 CW, 2010 WL 1838715 (N.D. Cal.

    May 5, 2010)............................................................................................................. 15, 17

*METX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569 (E.D. Tex. 2014)............... 14

*Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959 (S.D. Tex. 2016) ....................................... 11

*Morris v. Conn Credit Co.*, CV H-13-195, 2013 WL 12157173 (S.D. Tex. July 25, 2013).... 5

*Nw. Selecta, Inc. v. Munoz*, 106 F. Supp. 2d 223 (D.P.R. 2000)............................................ 16

*Palmer v. Amazon.com, Inc.*, 20-CV-2468 (BMC), 2020 WL 6388599 (E.D.N.Y. Nov. 2, 2020) .................................................................................................................................... 20

*Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312 (S.D. Fla. 2017)................................ 16

*Ramirez v. Colonial Freight Warehouse Co., Inc.*, 434 S.W.3d 244 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ...................................................................................................... 7

*Riley v. F.A. Richard & Associates, Inc.*, 46 Fed. Appx. 732 (5th Cir. 2002)......................... 6

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228 (W.D. Mo. 2020) ........................................................................................................................................... 20

*Sena v. Landstar Transp. Logistics, Inc.*, EP-14-CV-464-KC, 2015 WL 3454432 (W.D. Tex. May 28, 2015)............................................................................................................................. 8

*Serrano-Cordero v. Kroger Tex., L.P.*, 4-10-CV-483, 2016 WL 7234104 (E.D. Tex. June 22, 2016) ........................................................................................................................................ 8

*Shelton v. Bonham Indep. Sch. Dist.*, 4:17-CV-00764, 2018 WL 466258 (E.D. Tex. Jan. 18, 2018) ........................................................................................................................................ 21

*Sue Shin v. Campbell Soup Co.*, CV 17-1082-DMF (JCX), 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ......................................................................................................................... 17

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).................................................................. 5

*Union Pac. R.R. Co. v. Nami*, 498 S.W.3d 890 (Tex. 2016) ..................................................... 8

*Webb v. Livingston*, 6:13CV711, 2014 WL 11860703 (E.D. Tex. May 5, 2014)............ 4, 5, 9

*Webb v. Trader Joe's Co.*, 418 F. Supp. 3d 524 (S.D. Cal. 2019) ......................................... 16

*Zamalloa v. Thompson Landscape Services, Inc.*, 4:17-CV-00519-ALM-KPJ, 2018 WL 3032677 (E.D. Tex. May 3, 2018) report and recommendation adopted, 4:17-CV-00519-ALM-KPJ, 2018 WL 2928083 (E.D. Tex. June 12, 2018).................................................. 14

## STATUTES

21 U.S.C. § 452.................................................................................................................... 15

TEX. CIV. PRAC. & REM. CODE § 41.001(11) ........................................................................ 12

## RULES

FED. R. CIV. P. 12(b)(6) ........................................................................................................... 4

FED. R. CIV. P. 201(d)........................................................................................................... 11

FED. R. CIV. P. 8(a)(2) ............................................................................................................ 5

# I.

## STATEMENT OF THE ISSUES

1. Does Plaintiffs' state court petition outline sufficient facts to survive Swift Beef Company's Rule 12(b)(6) motion to dismiss? **Proposed Answer: Yes.**

2. Are Plaintiffs' claims preempted by federal law or executive order? **Proposed Answer: No.**

3. Should Plaintiffs' claims be dismissed under the primary jurisdiction doctrine? **Proposed Answer: No.**

# II.

## SUMMARY OF THE ARGUMENT

This case arises out of injuries Plaintiffs sustained while working at JBS USA Food Co. dba Swift Beef Company's ("Swift Beef") meatpacking plant in Cactus, Texas. The global COVID-19 pandemic has swept the country affecting millions of people and causing the deaths of almost 300,000 Americans. Meatpacking plants have become hotbeds for COVID-19 inspections because of their lack of safety measures to protect employees from contracting COVID-19.

Plaintiffs contracted COVID-19 while working for Swift Beef. They sued in Texas state court bringing exclusively state law claims against Swift Beef for negligence and gross negligence. Swift Beef removed the suit and filed a motion to dismiss arguing that Plaintiffs' state court petition fails to properly state claims for negligence and gross negligence, that Plaintiffs' claims are preempted by the Federal Meat Inspection Act ("FMIA") and executive order, and that dismissal is proper under the primary jurisdiction doctrine. All three arguments are incorrect for multiple reasons.

First, Swift Beef's 12(b)(6) motion should be denied because Plaintiffs have stated facts and brought claims for relief that are plausible on their face. Accepting these facts as true, and

resolving all reasonable inferences in Plaintiffs' favor, Plaintiffs' claims survive Swift Beef's motion to dismiss for failure to state a claim. Specifically, Plaintiffs have alleged facts that go directly to their negligence and gross negligence claims.

Second, Swift Beef's federal-preemption arguments are wrong and unsupported by law. Swift Beef has not cited a single case where state law tort injury claims were preempted by the FMIA. Said differently, Swift Beef has not shown either express or implied preemption of Plaintiffs' state law causes of action. And Swift Beef has not shown that President Trump's recent executive order ensuring the continued operation of meatpacking plants during the pandemic denies Plaintiffs a cause of action or preempts Plaintiffs' claims. In fact, the executive order supports Plaintiffs' claims.

And third, Swift Beef's primary jurisdiction arguments go against the law and the facts. In support of its arguments, Swift Beef cites two recent COVID-19 injunction cases that do not support dismissal of this state law tort personal injury case.

## III.

### FACTUAL BACKGROUND

Plaintiffs are Swift Beef workers who contracted COVID-19 because of unsafe working conditions and the negligent acts of the individual defendants at Swift Beef's Cactus, Texas, facility.

In the spring of 2020, the COVID-19 pandemic began sweeping the United States. Many states and counties began implementing proactive safety measures to prevent the spread of COVID-19. This included the State of Texas. Texas governor Greg Abbott issued a stay-at-home order for the state that took effect on April 2, 2020. Despite the stay-at-home order, Plaintiffs

were required to continue working at the Swift Beef meatpacking plant in Cactus, Texas—even prior to any Executive Orders.

Both before and after the April 2 stay-at-home order, Swift Beef failed to take adequate precautions to protect the workers at its meatpacking facilities, including at its Cactus, Texas plant. Even when the rest of the country and the state of Texas were taking significant precautions to prevent the spread of COVID-19, Swift Beef failed to do the same. And even after the April 2 order, Swift Beef still required its employees to come to work—and more importantly did not provide adequate precautions and protections to help protect its employees from COVID-19 such as providing and requiring masks. And as late as May, Swift Beef had no system of contract tracing and had not implemented six-foot spacing modifications or social distancing barriers on the production line.

Defendants Manny Guerrero (the complex General Manager), Ashley Henning (Safety Manager), Jacob Montoya (Plant Engineer), and Donna Estrada (Technical Services Manager and head of quality assurance) were directly responsible for implementing policies and procedures that would help prevent the spread of COVID-19 at Swift Beef's Cactus meatpacking plant. These Defendants were also directly responsible for implementing and enforcing adequate safety measures to prevent the spread of COVID-19 to the Swift Beef employees working at the plant. These employees, along with Swift Beef, failed to fulfill their individual job duties to protect Plaintiffs from contracting COVID-19 at the Cactus plant. As a direct result of the Defendants' negligence and gross negligence, Plaintiffs contracted COVID-19 at the Cactus, Texas meatpacking plant. As a result, Plaintiffs have experienced significant injuries.

Sadly, thousands of JBS USA Food Co. employees have been exposed to COVID-19 at its meatpacking facilities and at least four employees have died due to exposure and a pervasive

work-while-sick culture. At the time Plaintiffs filed their first amended petition, over 300 Swift

Beef employees had contracted COVID-19 at its Cactus, Texas plant.

Further, Swift Beef chose not to provide its employees with workers compensation

insurance. These actions further establish Plaintiffs' state law claims.

In short, Swift Beef's conduct, effectuated through both Swift Beef and the other named

Defendants, was negligent and grossly negligent and was the cause of Plaintiffs' injuries.

## IV.

### LEGAL STANDARD

"A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the

complaint fails to state a claim upon which relief can be granted." *Lahman v. Cape Fox Corp.*,

4:17-CV-00305, 2018 WL 4205424, at *1 (E.D. Tex. Sept. 4, 2018) (citing FED. R. CIV. P.

12(b)(6)). But Rule 12(b)(6) motions are generally "'viewed with disfavor'" and are "'rarely

granted.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

"To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must 'nudge[ ] their claim across

the line from conceivable to plausible' by pleading 'enough facts to state a claim to relief that is

plausible on its face.'" *Webb v. Livingston*, 6:13CV711, 2014 WL 11860703, at *1 (E.D. Tex.

May 5, 2014) (annotations as in original) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows

the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Lahman*, 2018 WL 4205424, at *1 (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir.

2009) (internal quotations omitted)). This means that the plaintiff's complaint—or in this case,

petition—"need only include 'a short and plain statement of the claim showing that the pleader is

entitled to relief.'" *Harris v. Coastal Offshore, Inc.*, CIV.A. C-11-58, 2011 WL 2457922, at *2

(S.D. Tex. June 16, 2011) (quoting FED. R. CIV. P. 8(a)(2)). The plaintiff's statement of a claim "must simply give [the] defendant fair notice of what [the] plaintiff's claim is and grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512-15 (2002). This is a "liberal and simplified 'notice of pleading' standard." *Id.*

When deciding a Rule 12(b)(6) motion to dismiss, the court "'must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.'" *Morris v. Conn Credit Co.*, CV H-13-195, 2013 WL 12157173, at *1 (S.D. Tex. July 25, 2013) (quoting *Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996)). In other words, "[t]he court is required to construe the complaint liberally in favor of the plaintiff, and take all facts pleaded in the complaint as true." *Webb*, 2014 WL 11860703, at *1 (citing *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986)). Plaintiffs need only establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And "[a]bsent a claim which is obviously insufficient, a court should not grant a Rule 12(b)(6) motion to dismiss, thereby denying [the] [p]laintiff an opportunity to develop facts to support his complaint." *Hoppenstein v. Ruckel*, 4:14-CV-467, 2015 WL 294295, at *3 (E.D. Tex. Jan. 22, 2015).

**V.**

**ARGUMENT**

1. **This Court should address Plaintiffs' motion to remand first before entertaining Defendant's motion to dismiss.**

As an initial matter, Plaintiffs recently filed a motion to remand asking the Court to remand this case to state court in Moore County, Texas. Swift Beef improperly removed the case based on federal officer, federal question, and diversity jurisdiction. In their motion, Plaintiffs show that Swift Beef has not carried its burden to establish federal jurisdiction of this state law tort case under any of these statutory provisions. Given the likelihood that upon consideration of

Plaintiffs' motion this Court will find that it lacks jurisdiction over this matter, Plaintiffs ask the Court to consider their motion to remand before entertaining Swift Beef's motion to dismiss. Courts in the Fifth Circuit generally address motions to remand before ruling on motions to dismiss. *See e.g. Riley v. F.A. Richard & Associates, Inc.*, 46 Fed. Appx. 732 (5th Cir. 2002) (explaining that when "faced with a motion to remand, a federal court must first determine whether it may properly exercise removal jurisdiction before ruling on a motion to dismiss the plaintiff's complaint"); *KIW, Inc. v. Zurich Am. Ins. Co.*, CIV.A. H-05-3240, 2005 WL 3434977, at *1 n.4 (S.D. Tex. Dec. 14, 2005) (citing *Heaton v. Monogram Credit Card Bank of Ga.*, 231 F.3d 994, 1000 (5th Cir. 2000) and noting that the court must cannot rule on a motion to dismiss absent subject matter jurisdiction and therefore must first consider a motion to remand). This Court should do the same.

### 2. Plaintiffs' petition alleges claims that are plausible on their face and establish Plaintiffs' negligence and gross negligence claims.

#### a. Swift Beef owed Plaintiffs a duty to provide a safe workplace and to implement policies and procedures that would have minimized the risk of the virus.

Swift Beef first argues that Plaintiffs have not provided facts that establish that Swift Beef owed Plaintiffs a duty. Swift Beef focuses primarily on Plaintiffs' failure to warn allegations. But Swift Beef's arguments do not provide any justification for dismissal of Plaintiffs' negligence claims or negate the facts Plaintiffs have alleged that clearly establish that Swift Beef owed Plaintiffs a duty to provide a safe workplace and to implement policies and procedures that would have minimized the risk of Plaintiffs contracting COVID-19.

In Texas, "[a] negligence cause of action has three elements: (1) a legal duty, (2) breach of that duty, and (3) damages proximately resulting from the breach." *Ramirez v. Colonial*

*Freight Warehouse Co., Inc.*, 434 S.W.3d 244, 249 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

"In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

Here, Plaintiffs have provided more than enough facts in their petition to establish that Swift Beef owed Plaintiffs a duty of care. Plaintiffs worked at Swift Beef's Cactus, Texas meatpacking facility. *See* Ex. 1: Pls.' First Am. Pet., at ¶¶ 15-18. As the COVID-19 pandemic began sweeping the United States, the CDC issued guidelines for workers like Plaintiffs. *Id.* at ¶ 20. These guidelines included recommendations for PPE use and social distancing. *Id.* In early April, Governor Abbott issued a stay-at-home order. *Id.* at ¶ 21. Despite the measures suggested by the CDC and the stay-at-home order issued by Governor Abbott, Swift Beef required Plaintiffs to work until they showed symptoms. *Id.* And at the same time, Swift Beef failed to take adequate precaution to protect its employees and to minimize the spread of the virus. *Id.* at ¶ 22. As late as May, Swift Beef had no system of contract tracing, six-foot spacing modifications, or social distancing barriers on the production line. *Id.* In other words, despite the well-known risk of COVID-19—especially to meatpacking employees—Swift Beef required its employees to come to work without sufficient protection. *Id.* As Plaintiffs' employer, Swift Beef had a duty to provide its employees with a safe working environment. *See Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (explaining that "[a]n employer has a duty to use ordinary care in providing

a safe workplace . . . [and] [i]t must, for example, warn an employee of the hazards of employment and provide needed safety equipment or assistance.").

In its motion, Swift Beef argues that the dangers of COVID-19 were commonly known and that as a result Swift Beef was under no obligation to warn Plaintiffs or to protect them from the virus. But the "commonly known hazard" doctrine does not absolve Swift Beef of liability under the facts Plaintiffs alleged in their petition. As Plaintiffs' employer, Swift Beef "cannot avoid liability 'by merely alleging that the hazard is known or appreciated when the employer has created a work environment where an employee is required to perform a task in an unsafe manner.'" *Sena v. Landstar Transp. Logistics, Inc.*, EP-14-CV-464-KC, 2015 WL 3454432, at *5 (W.D. Tex. May 28, 2015). Thus even if COVID-19 was a "commonly known hazard"— which Plaintiffs argue it was not—Swift Beef was still under an obligation and owed Plaintiffs "a duty to provide necessary instruments for [Plaintiffs to] deal with known hazards." *Serrano-Cordero v. Kroger Tex., L.P.*, 4-10-CV-483, 2016 WL 7234104, at *3 (E.D. Tex. June 22, 2016).

As noted above, Swift Beef forced it employees to come to work despite the Governor's stay-at-home order and failed to provide Plaintiffs with appropriate PPE to minimize the chances of Plaintiffs contracting the virus at work. These facts are clearly distinguishable from *Nami*, where the court held that "a property owner owes an invitee no duty of care to protect him from wild animals indigenous to the area unless he reduces the animals to his possession, attracts the animals to the property, or knows of an unreasonable risk and neither mitigates the risk nor warns the invitee." *Union Pac. R.R. Co. v. Nami*, 498 S.W.3d 890, 897 (Tex. 2016). There a worker contracted West Nile virus after being bitten by a mosquito. The court noted that mosquitos were a commonly known risk in that they were indigenous to the state of Texas and were more prevalent after Hurricane Ike. This case is not like *Nami* where Plaintiffs contracted a

virus due to Swift Beef's failure to protect them. Swift Beef increased the danger by forcing its employees to work in an unsafe environment and by failing to implement policies and procedures that would have mitigated the risks.

> **b. Plaintiffs have provided facts that show Swift Beef's actions led to Plaintiffs' injuries.**

Swift Beef also argues that Plaintiffs' petition does not provide facts showing causation and that the Court should dismiss Plaintiffs' claims for this alleged deficiency. Specifically, Swift Beef argues that Plaintiffs have not alleged facts showing that it is plausible that Plaintiffs contracted COVID-19 while at work at Swift Beef's meatpacking facility in Cactus, Texas.

In Texas, "[t]o establish causation in a personal-injury suit, a plaintiff must prove that the defendant's conduct caused an event and that this event caused the plaintiff to suffer compensable injuries." *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 36 (Tex. App.—Houston [1st Dist.] 2004, pet. denied), supplemented (Feb. 17, 2005) (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Coastal Tankships U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 603 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)).

"The general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of jurors." *Figueroa v. Davis*, 318 S.W.3d 53, 60 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007)). Ultimately, Plaintiffs will provide the needed expert testimony to prove their claims. But on a motion to dismiss, Plaintiffs need only allege facts that on their face "nudge their claim across the line from conceivable to plausible." *Webb*, 2014 WL 11860703, at *1. This is precisely what Plaintiffs have done here.

In their petition, Plaintiffs allege that Swift Beef failed to take the necessary precautions and to implement the necessary protections to help prevent the spread of COVID-19 at their

meatpacking facilities, including the Cactus, Texas facility where Plaintiffs worked. *See* Ex. 1: Pls.' First Am. Pet., at ¶ 22. On April 2, 2020, Governor Abbott issued a stay-at-home order for Texas residents in an effort to help slow the spread of COVID-19. *Id.* at ¶ 21. But despite the order, Plaintiffs were required to continue working at the Swift Beef meatpacking plant without adequate safety measures. *Id.* Even when the rest of the country, and specifically the state of Texas, was taking adequate precautions to prevent, or at least slow, the spread of the virus, Swift Beef pushed ahead without protections for its workers. *Id.* at ¶ 22. Swift Beef, and the other named Defendants, were directly responsible to implement a safe work environment by providing the workers adequate protections. *Id.* at ¶ 23. Swift Beef should have implemented and enforced safety measures to prevent the spread of COVID-19 to Plaintiffs. *Id.* But Swift Beef failed to take simple precautionary measures such as supplying masks to its employees, providing workspace that would allow social distancing, and limiting contact between employees. *Id.* As a direct result of these failures, Plaintiffs contracted COVID-19. *Id.*

Plaintiffs also showed that thousands of JBS USA employees have been exposed to COVID-19 at its facilities throughout the country. *Id.* at ¶ 24. And that at the time of filing, at least four employees had died due to exposure and a pervasive work-while-sick culture. *Id.* In fact, over 300 employees that work at Swift Beef's Cactus, Texas plant have contracted COVID-10. *Id.* These numbers are far higher (proportionally) than the infection rate in the general public. In short, it is well known that Swift Beef employees have experienced a much higher rate of positive cases of COVID-19 than the rest of the country. Said differently, it is more than plausible that Plaintiffs' contracted the virus at Swift Beef's meatpacking plant.[1]

---

[1] *See e.g.* "JBS gets $15,615 OSHA fine for fatal coronavirus outbreak," published Sept. 14, 2020, and accessed at https://www.fooddive.com/news/jbs-gets-15615-osha-fine-for-fatal-coronavirus-outbreak/585143/ (noting that "JBS has had at least 29,793 positive cases and 14 deaths across its facilities in the United States . . .".

Swift Beef argues that Plaintiffs cannot account for other factors that could explain their positive tests for COVID-19. And that these factors (community spread, the highly contagious nature of the virus, the number of unreported cases, the delayed onset of the virus, and the number of asymptomatic carriers) make it implausible that Plaintiffs contracted the virus at Swift Beef's facility. But these arguments are not compelling and certainly do not justify dismissal of Plaintiffs' petition. Put differently, these are jury arguments, not 12(b)(6) arguments.

In July 2020, the CDC issued a report[2] discussing the high rate of COVID-19 among workers in meat and poultry processing facilities across the United States.[3] The report concluded, "COVID-19 outbreaks among meat and poultry processing facility workers can rapidly affect large numbers of persons." *Id.* By the end of May 2020, data from 23 states showed that COVID-19 was diagnosed in 9.1% of meat and poultry processing workers. *Id.* This number is incredibly high given the general infection rate of the general public of 2%.[4] Several factors, including "prolonged close workplace contact with coworkers, . . . shared work spaces, shared transportation to and from the workplace, congregate housing, and frequent community contact with fellow workers" contributed to the spread and high rate of infection. *Id.* "The percentage of workers with COVID-19 ranged from 3.1% to 24.5% per facility." *Id.*

---

[2] Plaintiffs ask the Court to take judicial notice of citations to public websites like the CDC that relate to this response. The "court may take judicial notice at any stage of the proceeding." FED. R. CIV. P. 201(d). "The court may take judicial notice of matters of public record. . . ." *Morgan v. Medtronic, Inc.*, 172 F. Supp. 3d 959, 963 (S.D. Tex. 2016).

[3] *See* "Update: COVID-19 Among Workers in Meat and Poultry Processing Facilities—United States, April-May 2020," https://www.cdc.gov/mmwr/volumes/69/wr/mm6927e2.htm.

[4] As of September 18, 2020, the CDC reports 6,656,799 COVID-19 cases in the United States. *See* https://covid.cdc.gov/covid-data-tracker/#cases_totalcases, accessed on Sept. 18, 2020. The total U.S. population as of 2019 was approximately 328,200,000, making the general population rate of COVID-19 cases slightly over 2%.

Swift Beef meatpacking plants have experienced these same high rates of infection.[5] Given these statistics, Plaintiffs' allegations that they (1) are Swift Beef workers; (2) were not provided with appropriate PPE protections to limit the spread of COVID-19; and (3) contracted the virus from working at Swift Beef, are plausible on their face and certainly enough to show causation at the 12(b)(6) stage.

When considering Swift Beef's motion to dismiss, this Court "must accept as true all well-pleaded facts" in Plaintiffs' petition "and view those facts in the light most favorable" to Plaintiffs. *Lahman*, 2018 WL 4205424, at *1 (E.D. Tex. Sept. 4, 2018). This includes any facts that go to causation. Dismissal, then, of any of Plaintiffs' claims under Rule 12(b)(6) is inappropriate in light of any arguments put forth by Swift Beef.

### c. Plaintiffs have viable claims for gross negligence.

Swift Beef also challenges Plaintiffs' gross negligence claims. But Plaintiffs have provided more than enough in their state court petition to avoid dismissal of their gross negligence claims.

In Texas, a defendant is liable for gross negligence when he engages in an action that involves an extreme degree of risk in light of the potential harm to others and the actor proceeds with conscious indifference to the safety of others even though he has a subjective awareness of the risk. TEX. CIV. PRAC. & REM. CODE § 41.001(11). Specifically, "[g]ross negligence requires a showing of two elements: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective

---

[5] *See* "OSHA cites JBS Foods for failing to protect employees from coronavirus," Sept. 14, 2020, accessed at https://www.meatpoultry.com/articles/23782-osha-cites-jbs-foods-for-failing-to-protect-employees-from-coronavirus.

awareness of the risk involved, but nevertheless proceed[s] in conscious indifference to the rights, safety, or welfare of others." *Borjean v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014).

"Under the first element, 'extreme risk' is not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Lockett v. HB Zachry Co.*, 285 S.W.3d 63, 77 (Tex. App.—Houston [1st Dist.] 2009, no pet.). "Under the second element, actual awareness means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care." *Id.* In order to prove either element, the plaintiff need only show circumstantial evidence. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). The subjective awareness and conscious indifference necessary for a finding of gross negligence will almost always require evidence of "all of the surrounding facts, circumstances, and conditions, not just individual elements or facts." *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005).

Here, Plaintiffs have provided fair notice of and facts to support their gross negligence claims including that:

- The pandemic began sweeping the United States in the early spring of 2020. *See* Ex. 1: Pls.' First Am. Pet., at ¶ 19.

- As early as March 9, 2020, the CDC published federal guidelines for workers. The guidelines included recommendations for social distancing of at least 6 feet, and the use of Personal Protective Equipment. *Id.* at ¶ 20.

- On April 2, 2020, Governor Abbott issued a stay-at-home. By that time, COVID-19 was known to be effecting meatpacking plants like Swift Beef's Cactus, Texas facility where Plaintiffs worked. *Id.* at ¶ 21.

- Swift Beef failed to provide a safe work environment and required Plaintiffs to continue working at the meatpacking plant when it was no longer safe to do so due to COVID-19. *Id.* at ¶ 29.

- Swift Beef knew the risks of the virus yet failed to provide adequate PPE to its workers. *Id.*

- Swift Beef failed to implement adequate precautions and social distancing at the plant and failed to follow guidelines set by WHO and the CDC. *Id.*

In short, these actions constitute gross negligence in that Swift "exposed Plaintiffs to an extreme degree of risk with no regard for the probability and magnitude of the potential harm." *Id.* at ¶ 32. Swift Beef "had actual, subjective awareness of the risk involved, yet chose to proceed in conscious indifference to the rights, safety and welfare of Plaintiffs." *Id.*

**3. The FMIA does not preempt Plaintiffs' state law negligence and gross negligence claims.**

Swift Beef next argues that the Federal Meat Inspection Act preempts Plaintiffs' claims. These arguments are meritless. Swift Beef fails to cite any authority that the FMIA preempts Plaintiffs' state law tort claims.

Under the Supremacy Clause, article VI, clause 2, of the United States Constitution, any state law that conflicts with federal power is preempted. *Cartwright v. Pfizer, Inc.*, 369 F. Supp. 2d 876, 881 (E.D. Tex. 2005). In other words, "[f]ederal law will override state law under the Supremacy Clause when (1) Congress expressly preempts state law; (2) Congressional intent to preempt may be inferred from the existence of a pervasive federal regulatory scheme; or (3) state law conflicts with federal law or its purposes." *Id.* (citing *English v. General Elec. Co.*, 496 U.S. 72, 78-79 (1990)).

"Federal preemption is a question of law reserved for the court." *Zamalloa v. Thompson Landscape Services, Inc.*, 4:17-CV-00519-ALM-KPJ, 2018 WL 3032677, at *3 (E.D. Tex. May 3, 2018) report and recommendation adopted, 4:17-CV-00519-ALM-KPJ, 2018 WL 2928083 (E.D. Tex. June 12, 2018). Preemption can be express or implied. *METX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569, 575 (E.D. Tex. 2014). "State law is expressly preempted when Congress uses clear preemptive language in the federal statute or regulation." *Id.* "Absent

14

express preemptive language, a federal statute or regulation impliedly preempts state law when the language indicates a Congressional intent to exclusively and completely occupy a legislative field." *Id.*

Swift Beef argues that the preemption clause in the FMIA expressly preempts Plaintiffs' state law personal injury claims. This argument is incorrect based on a plain reading of the FMIA. To be clear, Plaintiffs' claims do not arise under the FMIA, which "regulates a broad range of activities at slaughterhouses to ensure the safety of meat and the humane handling of animals." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012); *see also Meaunrit v. The Pinnacle Food Groups, LLC*, C 09-4555 CW, 2010 WL 1838715, at *5 (N.D. Cal. May 5, 2010) (noting that "Congress enacted the FMIA and the PPIA in part to prevent the interstate transfer of adulterated and misbranded meat and poultry products."). The FMIA expressly preempts states from regulating "the inspection, handling, and slaughter of livestock for human consumption." *Nat'l Meat Ass'n*, 565 U.S. at 455. It does not preempt state law tort claims and wrongful death claims for injuries that were caused at Defendants' facility. *See id.* at 467, n. 10 (explaining that the FMIA does not preempt "state laws of general application [such as] workplace safety regulations, building codes, etc."); *see also Meaunrit v. The Pinnacle Food Groups, LLC*, C 09-4555 CW, 2010 WL 1838715, at *5 (N.D. Cal. May 5, 2010) (noting that "Congress enacted the FMIA and the PPIA in part to prevent the interstate transfer of adulterated and misbranded meat and poultry products.").

Given the limited scope of preemption in the FMIA, it is no surprise that Swift Beef could not cite a single case where the FMIA (or the related Poultry Products Liability Act, for that matter) preempted a plaintiff's state law tort personal injury claims. In fact, after an extensive search, Plaintiffs were unable to find a case where injury claims like those they have

15

filed here were preempted by the FMIA or the PPIA or any other related statute. In every case, FMIA and PPIA preemption was limited to instances having to do with the production and distribution of meat and poultry products, not the working conditions in the meat plant. For example, the following cases are typical of the FMIA and PPIA cases courts have dealt with in the past:

- *Ass'n des Èleveurs de Canards et d'Oies de Quebec v. Becerra*, 870 F.3d 1140 (9th Cir. 2017) (analyzing California foie grais statute and finding that it was not preempted by the PPIA);

- *Del Real, LLC v. Harris*, 966 F. Supp. 2d 1047, 1064 (E.D. Cal. 2013) (finding that California's slack-fill provisions are "requirements in addition to or different than" those set forth in the FMIA and PPIA);

- *Brower v. Campbell Soup Co.*, 243 F. Supp. 3d 1124 (S.D. Cal. 2017) (in a soup packaging label case, finding that the express preemption provisions of the PPIA and FMIA were implicated in the consumers' claims);

- *Webb v. Trader Joe's Co.*, 418 F. Supp. 3d 524 (S.D. Cal. 2019) (stating that the PPIA preempted a consumer's state law claims arising from grocery store's alleged misrepresentation of water content of its branded raw poultry products, even if the consumer's testing indicated that products' labels were inaccurate);

- *Nw. Selecta, Inc. v. Munoz*, 106 F. Supp. 2d 223 (D.P.R. 2000) (explaining that a regulation adopted by the Dept. of Agriculture of Puerto Rico requiring poultry's inspection date to appear in federal inspection certificate was preempted by the PPIA);

- *Phelps v. Hormel Foods Corp.*, 244 F. Supp. 3d 1312 (S.D. Fla. 2017) (holding that the FMIA and the PPIA expressly preempted consumer's state law claims against manufacturer of meat products for violation of the Florida Deceptive and Unfair Trade Practices Act, negligent misrepresentation, misleading advertising, breach of express warranty, and unjust enrichment, alleging "100% Natural" and "No Preservatives" claims on products were false, misleading, and deceptive. Consumer sought to impose additional or different regulations on labeling than those required by the USDA);

16

- *Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993 (2nd Cir. 1985), *aff'd sum nom. Gerace v. Grocery Manufacturers of Am., Inc.*, 474 U.S. 801 (1985) (finding that a New York law that imposed other labeling requirements was preempted by the FMIA and the PPIA);

- *Drayton v. Pilgrim's Pride Corp.*, CIV.A. 03-2334, 2004 WL 765123 (E.D. Pa. Mar. 31, 2004) (holding that the PPIA preempted claims for negligent labeling related to packaging and labeling);

- *Kraft Foods N. Am., Inc. v. Rockland County Dep't of Weights & Measures*, 01 CIV. 6980 (WHP), 2003 WL 554796 (S.D.N.Y. Feb. 26, 2003) (explaining that Rockland County's net weight inspection practices impermissibly "differ from" and are "contrary to" the federal food packaging statutes);

- *Meaunrit v. The Pinnacle Foods Group, LLC*, C 09-4555 CW, 2010 WL 1838715 (N.D. Cal. May 5, 2010) (dismissing the plaintiffs' UCL, CLRA, and breach of warranty claims to the extent they rely on the representations made on Defendants' labels due to preemption by the FMIA and the PPIA);

- *Sue Shin v. Campbell Soup Co.*, CV 17-1082-DMF (JCX), 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) (stating that the PPIA preempts the plaintiffs' claims to the extent they seek to impose marking, labeling, packaging, or ingredient requirements).

In short, Swift Beef cannot point the Court to a single personal injury case where the FMIA or the PPIA preempted state law tort claims. This makes sense given that the FMIA is intended to regulate the packaging and distribution of poultry products, not the working conditions and work environment out of which Plaintiffs' claims arose. In short, Swift Beef cannot hide behind the FMIA for its failures to provide Plaintiffs with a safe work environment. Thus, Plaintiffs' claims are not preempted by the FMIA; therefore, the Court should deny Swift Beef's motion to dismiss.

### 4. The executive order does not justify preemption.

Swift Beef throws a final preemption Hail Mary arguing that President Trump's recent executive order keeping meatpacking plants open despite state lockdowns and the DPA preempts

17

Plaintiffs' claims. But this argument too fails in light of the purpose, timing, and plain language of the order.

On April 28, 2020, President Trump issued an Executive Order "Delegating Authority Under the DPA with Respect to Food Supply Chain Resources During the National Emergency Outbreak of COVID-19." Although Swift Beef argues to the contrary, President Trump's order neither mandated nor forgave Swift Beef's conduct that is at issue in this suit. The order simply: (1) declared that meat and poultry in the food supply chain fall under Section 101(b) of the Defense Production Act; and (2) delegated the president's Defense Production Act authority over the food supply chain to Secretary of Agriculture Sonny Perdue. The order instructed the Secretary to take all appropriate actions "to ensure America's meat and poultry processors continue operations consistent with the guidance from the CDC and OSHA."[6]

Importantly, Swift Beef unnecessarily and recklessly exposed Plaintiffs to COVID-19 weeks before the April 28 order. Plaintiffs have brought claims against Swift Beef for its acts that led directly to Plaintiffs contracting COVID-19. Plaintiffs allege that "Prior to April 2, 2020" Swift Beef "failed to take adequate precautions to protect its employees from COVID-19 risks." Ex. 1: Pls.' First Am. Pet., at ¶ 22. In fact, Swift Beef "did not provide masks for its employees until April 2 and did not mandate the use of masks until April 30." *Id.* Thus, the Plaintiffs' claims did not arise under the President's Executive Order and therefore it is wholly irrelevant to this suit. And even for the portions of Plaintiffs' claims that arise after the April 2, 2020, executive order, the conduct alleged by Plaintiffs runs directly contrary to the plain language of the executive order that poultry facilities must "continue operations consistent with

---

[6]*See* Executive Order, accessed on Sept. 16, at https://www.whitehouse.gov/presidential-actions/executive-order-delegating-authority-dpa-respect-food-supply-chain-resources-national-emergency-caused-outbreak-covid-19/.

the guidance from the CDC and OSHA." Either way, the executive order does not preempt Plaintiffs' claims.

**5. Swift Beef's primary jurisdiction arguments do not apply to this case.**

As a final point, Swift Beef asks the Court to dismiss or stay the case and refer it to OSHA under the doctrine of primary jurisdiction. Quite simply, this is not a primary jurisdiction case and the other COVID-19 cases Swift Beef cites in its motion are inapplicable to this state law tort personal injury case.

"Primary jurisdiction is an administrative law doctrine that arises when a court and an agency have concurrent original jurisdiction over a dispute." *Cash Am. Intern. Inc. v. Bennett*, 35 S.W.3d 12, 18 (Tex. 2000). Under this doctrine, courts are to defer to administrative agencies "only when the claim's enforcement requires the resolution of issues that are 'within the special competence of an administrative agency.'" *Id.* To determine its applicability, courts are to ask "whether the reasons for the existence of the primary jurisdiction doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* (internal citations and modifications omitted).

Most important to the analysis here, the primary jurisdiction doctrine is not applicable— *i.e.* courts should not defer to an administrative agency—"when the administrative agency is powerless to grant the relief sought and has no authority to make incidental findings which are essential to the granting of the relief." *Foree v. Crown Cent. Petroleum Corp.*, 431 S.W.2d 312, 316 (Tex. 1968).

Simply put, the primary jurisdiction doctrine does not apply to Plaintiffs' personal injury claims and does not require dismissal or a stay.

Importantly, the cases Swift Beef cites in its motion are instructive as to why the primary jurisdiction doctrine is inapplicable here. In fact each is easily distinguishable. In both *Rural*

*Cmty. Workers All. v. Smithfield Foods, Inc.*, and *Palmer v. Amazon.com, Inc.*, the plaintiffs

sought injunctive relief for their respective employees' failures to provide a safe workplace due

to the pandemic—not personal injury claims arising out of their employer's negligence and gross

negligence as are the Plaintiffs here. *Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F.

Supp. 3d 1228, 1240-41 (W.D. Mo. 2020) (where plaintiffs sought TRO and preliminary

injunction alleging that the plant was not abiding by appropriate safety policies court deferred to

agency because the plaintiffs' claims "both succeed or fail on the determination of whether the

Plant is complying with the Joint Guidance"—a determination that goes directly to the heart of

OSHA's mission of enforcing occupational safety and health standards); *Palmer v. Amazon.com,*

*Inc.*, 20-CV-2468 (BMC), 2020 WL 6388599, at *2 (E.D.N.Y. Nov. 2, 2020) (where plaintiffs

filed for preliminary injunction and court referred matter to OSHA because the plaintiffs' claims

would have forced the court to analyze Amazon's employment practices and policies, determine

whether those policies created an unsafe workplace or otherwise violated state or federal

guidance and standards, and to implement and oversee new workplace policies). In short, OSHA

cannot provide the relief Plaintiffs seek here in this personal injury, state tort action. Thus, the

doctrine of primary jurisdiction does not apply here as this Court is in a better position to

adjudicate Plaintiffs' injury claims. A stay or dismissal on the grounds of primary jurisdiction

would be inappropriate. Accordingly, the Court should deny Swift Beef's motion on this point as

well.

> **6. In the event that the Court finds that Swift Beef's motion has merit as to any of Plaintiffs' claims, Plaintiffs ask for leave to amend their petition to cure any alleged deficiencies.**

As noted above, Plaintiffs' state court petition passes muster under federal pleading rules.

But in the event the Court finds that any of Plaintiffs' claims need additional clarification,

Plaintiffs ask the Court to grant them leave to amend their petition to cure any deficiencies found

therein. Rule 15(a) of the Federal Rules of Civil Procedure "instructs the court to 'freely give leave when justice so requires.'" *Shelton v. Bonham Indep. Sch. Dist.*, 4:17-CV-00764, 2018 WL 466258, at *1 (E.D. Tex. Jan. 18, 2018). "The rule 'evinces a bias in favor of granting leave to amend.'" *Id.* Thus if necessary, and the Court is inclined to grant Swift Beef's motion as to any of Plaintiffs' claims, Plaintiffs ask the Court to give them the opportunity to amend their petition to add any additional facts the Court finds necessary to avoid dismissal of any of their claims.

## VI.

### CONCLUSION

For the foregoing reasons, the Court should deny Swift Beef's motion to dismiss.


Respectfully Submitted,

ARNOLD & ITKIN LLP

*/s/ Kurt Arnold*

_____
Kurt Arnold
State Bar No: 24036150
karnold@arnolditkin.com
Caj Boatright
State Bar No: 24036237
cboatright@arnolditkin.com
Roland Christensen
State Bar No: 24101222
rchristensen@arnolditkin.com
Joseph McGowin
State Bar No: 24117268
jmcgowin@arnolditkin.com
Claire Traver
State Bar No: 24115871
ctraver@arnoldiktin.com
6009 Memorial Drive
Houston, TX  77007
Tel: 713.222.3800
Fax: 713.222.3850
e-service@arnolditkin.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing pleading has been electronically filed through the Court's CM/ECF system, which will send notification of electronic filing to all counsel of record on December 9, 2020.

*/s/ Joseph McGowin*

_____

Joseph McGowin