IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION



| | | |
|---|---|---|
| SIMON GARCIA, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:20-CV-263-Z |
| | § | |
| SWIFT BEEF CO., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Remand (ECF No. 11) and Defendants' Motion to Dismiss Individual Defendants (ECF No. 8). For the reasons stated below, Plaintiffs' Motion is **DENIED**, and Defendants' Motion is **GRANTED**.

**BACKGROUND**

Plaintiffs were employees of Defendant Swift Beef's meat-packing plant located in Cactus, TX during the first half of 2020. ECF No. 1-16 ("First Amended Petition") at 3–4. As the COVID-19 pandemic swept across the United States, many states, including Texas, began to implement precautionary measures to slow the spread of the virus. *Id* at 5. Effective April 2, 2020, Texas Governor Greg Abbott issued a stay-at-home order, but Plaintiffs allege they were required to continue to work at Swift Beef's plant. *Id.*

While working at the plant, Plaintiffs allege that they were exposed to and contracted COVID-19. *Id* at 6. Asserting claims for negligence and gross negligence, Plaintiffs brought suit in Texas state court naming Manny Guerrero, Ashley Henning, Jacob Montoya, and Donny Estrada as defendants. *Id.* at 5. Plaintiffs alleged these individuals "failed to fulfill their job duties

to provide a safe working environment to Plaintiffs." *Id.* Plaintiffs later amended their state petition to include Swift Beef Company as a defendant. *Id.* at 2.

On November 11, 2020, Defendants timely removed the case to this Court under 28 U.S.C. §§ 1331, 1332, and 1442(a)(1). ECF No. 1 at 4. On November 18, 2020, the individual defendants moved to dismiss the claims against them. ECF No. 8. On December 8, 2020, Plaintiffs filed their Motion to remand this case back to the 69th District Court, Moore County. ECF No. 11.

The Court proceeds by deciding the motion to remand first and finds that there is jurisdiction under the federal officer removal statute. The Court then addresses the individual Defendants' Motion to Dismiss (ECF No. 8).

### JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE

#### A. Legal Standards

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Lavery v. Barr*, 943 F.3d 272, 275 (5th Cir. 2019) (internal quotations omitted). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

The federal officer removal statute, however, must be liberally interpreted because of its broad language and unique purpose. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 147 (2007). The statute provides, in relevant part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

2

> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity *for or relating to* any act under color of such office...

28 U.S.C. § 1442(a)(1) (emphasis added).

While courts are to interpret this statute liberally, the removing defendant still bears the burden of establishing a basis for federal jurisdiction. *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 397 (5th Cir. 1998). In light of the 2011 Congressional Amendment to section 1442(a), the Fifth Circuit articulated a four-part test to determine whether federal officer removal is justified: (1) the party has asserted a colorable federal defense; (2) the party is a "person" within the meaning of the statute; (3) the party has acted pursuant to a federal officer's directions; (4) and the charged conduct is connected or associated with an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

**B. Analysis**

The Court finds Defendants have carried their burden to establish jurisdiction under the federal officer removal statute.

*1. Defendants have asserted a colorable federal defense.*

The well-pleaded complaint rule provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Caterpillar v. Williams*, 482 U.S. 386, 392 (1987). Consequently, the well-pleaded complaint rule usually bars defendants from removing to federal court when the only jurisdictional hook is a federal defense. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

But the federal officer removal statute is an exception. It permits an officer to remove a case even if no federal question is raised so long as the officer asserts a federal defense. *Latiolais*, 951 F.3d at 290. The asserted defense need not even be clearly sustainable. *Id.* at 297. Instead, "an

asserted federal defense is colorable unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Id.* "Certainly, if a defense is plausible, it is colorable." *Id.*

In their notice of removal, Defendants raised two federal defenses. ECF No. 1 at 15–16. First, they argue that the Federal Meat Inspection Act (FMIA) expressly preempts plaintiffs' state-law claims. *Id.* Second, the Defendants claim that there is conflict preemption between Plaintiffs' claims and President Trump's April 28 *Food Supply Chain Resources* Executive Order paired with the Defense Production Act. *Id.*

The Federal Meat Inspection Act "regulates a broad range of activities at slaughterhouses to ensure the safety of meat and the humane handling of animals." *Nat'l Meat Ass'n v. Harris*, 565 U.S. 452, 455 (2012). The FMIA contains an express preemption provision which reads:

> "Requirements *within the scope* of this [Act] with respect to *premises, facilities and operations* of any establishment at which inspection is provided under . . . this [Act], which are *in addition to, or different* than those made under this [Act] may not be imposed by any State."
>
> 21 U.S.C. § 678 (emphasis added).

In Plaintiffs' view, the FMIA only expressly preempts state laws covering the inspection, handling, and slaughter of livestock for human consumption, so their common-law negligence claims are not preempted. ECF No. 11 at 16.

Defendants emphasize the first portion of the provision, which prohibits state-law requirements "with respect to premises, facilities and operations." ECF No. 20 at 17. Defendants also stress the Supreme Court has ruled that the Federal Meat Inspection Act's preemption clause "sweeps widely." *Id.* (quoting *Nat'l Meat Ass'n*, 565 U.S. at 459).

In sum, Plaintiffs frame this case as a workplace safety issue that is not preempted by FMIA. Defendants frame this case as being about "sanitary conditions" and "disease control" which could be pre-empted by the FMIA. *See, e.g.*, 9 C.F.R. §§ 416.5(b)-(c), 416.2(b).

Preliminarily, the Court takes note that the Supreme Court has held "that state laws of general application (workplace safety regulations, building codes, etc.) will *usually* apply to slaughterhouses." *Nat'l Meat Ass'n*, 565 U.S. at 467 n. 10 (emphasis added). The word "usually" implies that *sometimes* the FMIA *does* preempt state workplace safety regulations.

This case is not a typical workplace injury case such as a slip and fall that lands outside of the scope of the FMIA's preemption provision. *See, e.g.* ECF No. 25 at 9 ("Swift does not cite a single case where a state personal injury claim filed in state court was successfully removed based on the FMIA preemption clause"). Instead, this case arose in the unique context of a global pandemic. Workplace conditions and procedures related to disease prevention implicate food safety, which could bring Plaintiffs' claims under the ambit of the FMIA.

At this stage, the Court finds, without expressing any opinion on the merits, that preemption under the Federal Meat Inspection Act is plausible. And, as the Fifth Circuit has held, if the defense is plausible, it is colorable. *Latiolais*, 951 F.3d at 297. Accordingly, Defendants have satisfied the first prong of the *Latiolais* requirements.[1]

### 2. Defendants are "persons" within the meaning required in Section 1442.

The parties do not dispute that Defendants satisfy the second prong of the *Latiolais* test. Section 1442(a)(1) applies to "private persons" and corporations. *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014) (quoting *Watson*, 551 U.S. at 143); *Latiolais*, 951 F.3d at 291.

---

[1] Because Defendants have a colorable defense under the FMIA, the Court does not address Defendants' second argument regarding conflict preemption with President Trump's Executive Order. Here, the allegations contained in the First Amended Petition do not contain facts regarding the dates when Plaintiffs contracted COVID-19 except for Plaintiff Garcia who was alleged to be hospitalized on April 18, which was before the Executive Order was issued.

### *3. Defendants acted under a federal officer's directions.*

Defendants must establish they were *acting under* the directions of a federal officer to satisfy the third prong under *Latiolais*. 28 U.S.C. § 1442(a)(1); *Latiolais*, 951 F.3d at 296.

Under section 1442(a)(1), a "private person's acting under must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. "Although the words 'acting under' are undoubtedly broad, the Supreme Court has clarified that they must refer to a relationship that involves acting in a certain capacity, considered in relation to one holding a superior position or office." *Zeringue v. Crane Company*, 846 F.3d 785, 792 (5th Cir. 2017).

Defendants point to two possible sources of direction from a federal officer: Swift Beef's designation as "critical infrastructure" and President Trump's April 28, 2020 Executive Order. ECF No. 20 at 3–7.[2]

Defendants argue they were acting under a federal officer's directions because Swift Beef was designated as "critical infrastructure" by the federal government. The Patriot Act empowers the federal government to designate particular industries as "critical infrastructure," meaning that "their incapacitation or destruction would have a debilitating effect on security, national economic security, national public health or safety, or any combination thereof." *Id.* at 3.

On March 13, 2020, Swift Beef, along with other components of the Food and Agriculture Sector, was designated as critical infrastructure in response to the COVID-19 pandemic. *Id.* at 4;

---

[2] Because the Court holds that Defendants were acting under the direction of a federal officer because of Defendants' "critical infrastructure" designation, the Court does not address Defendants' second argument regarding President Trump's Executive Order. Here, the allegations contained in the First Amended Petition do not contain facts regarding the dates when Plaintiffs contracted COVID-19 except for Plaintiff Garcia who was alleged to be hospitalized on April 18, which was before the Executive Order was issued. *See supra*, fn 1.

Exec. Office of Pres., *Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 Fed. Reg. 15,337, 15,337 (Mar. 13, 2020).

After this designation, Swift Beef interacted with multiple government agencies and was "in close contact with various federal agencies, including officials at the CDC and the National Institute for Occupational Safety and Health ("NIOSH")." ECF No. 20 at 4. Furthermore, the Department of Homeland Security relied upon its "National Critical Functions Set" to designate certain critical "supply" functions. *Id.* "Those designations flowed down to individual Swift Beef employees who received letters authorizing them to continue working and traveling in support of 'critical infrastructure' notwithstanding any state or local quarantine restrictions." *Id.* at 5.

Plaintiffs contend that the critical-infrastructure designation is insufficient to conclude that defendants were "acting under" the directions of a federal officer. Plaintiffs specifically cite to *Watson*, where the Supreme Court held that private entities that are merely subject to government regulation cannot remove under the federal officer removal statute. 551 U.S. at 152 ("In our view, the help or assistance necessary to bring a private person within the scope of the statute does *not* include simply *complying* with the law."). Plaintiffs aver that Defendants' evidence only proves "it communicated with federal regulators and that Swift was subject to federal regulation." ECF No. 25 at 8.

But unlike *Watson*, Defendants here exhibited "an effort to help assist, or carry out, the duties and tasks of the federal superior." *Watson*, 551 U.S. at 152. Defendants did so by working directly with the Department of Agriculture to guarantee that there was an adequate food supply. ECF No. 20 at 5. ("On March 16, 2020, the Department of Agriculture issued a statement that it was committed to the 'timely delivery of services to maintain the movement of America's food

supply from farm to fork," and that it was "prepared to *utilize their authority and all administrative means and flexibilities* to address staffing considerations.") (emphasis added).

Accordingly, the Court finds Defendants were "acting under" the directions of federal officials when the federal government announced a national emergency on March 13, 2021 and designated Swift Beef as "critical infrastructure."

> *4. The charged conduct is connected or associated with an act pursuant to a federal officer's directions.*

Finally, Defendants must show a connection or association between the federal officer's directions and Plaintiffs' claims. *Latiolais*, 951 F.3d at 296.

Plaintiffs assert that there must be a "causal nexus" between the Plaintiffs' claims and the directions that the Defendants received from a federal officer. *See* ECF No. 11 at 12. Plaintiffs rely on *Winters v. Diamond Shamrock Chemical Company*, 149 F.3d 387 (5th Cir. 1998). The *Winters* standard no longer governs.

The Fifth Circuit in *Latiolais* elucidated the correct standard after the 2011 Congressional Amendment to 28 U.S.C. § 1442(a), changing the word "for" to the phrase "for *or relating to*." *Latiolais*, 951 F.3d at 292 (emphasis added). The *Latiolais* court held that the 2011 revisions "broadened federal officer removal to actions, not just causally connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id.* at 292 (emphasis added). Under this more relaxed standard, the Court finds Defendants have satisfied their burden.

Plaintiffs allege that Defendants failed to create an adequately safe working environment during the COVID-19 pandemic by not providing personal protective equipment or implementing social-distancing measures. First Amended Petition at 5–6. According to the Plaintiffs, the lack of personal protective equipment and social distancing measures led to their contraction of COVID-19. *Id.* at 6.

As explained above, Swift Beef acted under the color of federal authority by maintaining operations during the pandemic to ensure the stability of the national food supply. Logically, the choice of what safety precautions should be taken — such as whether personal protective equipment should be provided or what social-distancing measures should be adopted — is connected to the broader decision to keep the plant operating during the pandemic. Thus, the final prong of the *Latiolais* standard is met.[3]

### C. Conclusion

For the reasons set forth above, Defendants have met the standards of the federal officer removal statute. On that ground alone, Plaintiffs' Motion to Remand is properly **DENIED**.

### MOTION TO DISMISS THE INDIVIDUAL DEFENDANTS

### A. Plaintiffs' Factual Allegations

According to Plaintiffs' First Amended Petition, Defendants Guerrero, Henning, Montoya, and Estrada respectively held the roles of General Manager, Safety Manager, Plant Engineer, and Technical Services Manager. *Id.* at 2–3. Because of these roles, Plaintiffs allege Defendants were "directly responsible for implementing a safe work environment at [Swift Beef's] Cactus meatpacking plant." *Id.* at 5. Plaintiffs further allege that Defendants were "also directly responsible for implementing and enforcing adequate safety measures to prevent the spread of COVID-19." *Id.*

Plaintiffs aver that, upon information and belief, Defendants "failed to fulfill their duty to provide a safe working environment to Plaintiffs." *Id.* at 6. As a result, Plaintiffs allege they contracted COVID-19 at Swift Beef's meatpacking plant. *Id.*

---

[3] Because defendants have established federal jurisdiction under the federal officer removal statute, it is not necessary to determine whether there is federal question jurisdiction as well. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

9

The individual Defendants now move to dismiss the claims against them. ECF No. 8 at 2. Defendants argue that "the duty to provide a safe workplace is nondelegable and belongs solely to the employer rather than individual employees." *Id.* The Court agrees.

### B. Legal Standards

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (internal marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal marks omitted).

The Court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). After assuming the veracity of any well-pleaded allegations, the Court should then "determine whether they plausibly give rise to an entitlement of relief." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). This standard of "plausibility" is not necessarily a "probability requirement," but it requires "more than

a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal marks omitted).

After a case has been removed under the federal officer removal statute, "[a] federal court's role . . . is similar to that of a federal court sitting in diversity." *Winters v. Diamond Shamrock Chem. Co.*, 941 F. Supp. 617, 620 (E.D. Tex. 1996). "Accordingly, the federal court applies the choice of law rules of the forum state to determine the applicable law." *Id.* In this case, Texas substantive law controls.

### C. The individual defendants did not owe an independent duty to other Swift Beef employees.

Under Texas law, *employers* have a nondelegable duty to provide a safe working environment for their employees. *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). When the employer is a corporation, the law charges the corporation itself, not the individual corporate officer, with the duty to provide the employee a safe workplace. *Leitch*, 935 S.W.2d at 117. A corporate officer or agent's individual liability arises only when the officer or agent owes an *independent duty of reasonable care* to the injured party apart from the employer's duty. *Id.*

In *Leitch*, an employee sued his employer, Pro Com Marketing Services, and two individuals who were officers, directors, and stockholders of Pro Com Marketing Services after suffering an injury while on the job. *Id.* at 116. The employee sued the corporate officers partially "because of their positions" within the company. *Id.* at 117. The employee alleged that "all three defendants did not provide a safe work place and equipment [and] did not provide proper equipment." *Id.*

11

The Texas Supreme Court held that "a corporate officer acting on the corporation's behalf does not owe a corporate employee an individualized duty to provide that employee with a safe work place." *Id.* at 118. The Texas Supreme Court reached that conclusion by reasoning that actions by the officers, "whether active or passive, were actions of a corporate officer on behalf" of the corporation and are "deemed" the corporation's acts. *Id.* at 118.

This case falls squarely into *Leitch*. Nowhere in Plaintiffs' First Amended Complaint is there even *an attempt* to differentiate the duties owed by the individual defendants and those owed by Swift Beef as a corporation. *See In re Butt*, 495 S.W.3d 455, 464 (Tex. App.—Corpus Christi 2016) (Plaintiffs cannot impose liability on "employees where the employer and the employees committed identical negligent acts or omissions.").

Plaintiffs' Response to the Motion only confirms that there is no difference in duties owed. Consider Plaintiffs' arguments:

- *Swift Beef* failed to take adequate precautions to protect the workers at its meatpacking facilities. ECF No. 15 at 2 (emphasis added).

- Here, the individual named Defendants *held positions* that necessarily placed a duty on them to implement policies and practices to prevent the spread of COVID-19. *Id.* at 7 (emphasis added).

- These Defendants failed to fulfill their *job duties*. *Id.* (emphasis added).

- Defendants' conduct, effectuated through both *Swift Beef* and the other named Defendants, was negligent. *Id.* at 3 (emphasis added).

Each of these arguments demonstrate that the alleged acts of negligence are identical. Furthermore, each argument reinforces Defendants' contention that they had no *separate* duties apart from their duties as employees.[4]

---

[4] Defendants state the individual Defendants "were fraudulently joined in Plaintiffs' effort to defeat diversity jurisdiction." ECF No. 20 at 1. The Court is inclined to agree. But because the Court has found jurisdiction in this case under the federal officer removal statute, there is no need to determine if the individual defendants were improperly joined. ECF No. 20 at 20.

### D. Any attempt to amend is futile.

Plaintiffs have requested the opportunity to amend their complaint. ECF No. 15 at 7. According to Federal Rule of Civil Procedure 15(a)(2), "the court should freely give leave [to amend before trial] when justice so requires." Fed. R. Civ. P. 15(a)(2). But it is within the district court's discretion to deny a motion to amend if it is futile. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000). An amendment is considered futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling*, 234 F.3d at 872–73.

The premise of Plaintiffs' suit is rooted in Swift Beef's duty to provide a safe working environment. First Amended Petition at 5–6. "Even if Plaintiffs amended their complaint a second time, corporate employees, individually, still would not have a duty to provide a safe working environment. Thus, any amendment to the complaint would be futile." *Fields v. Brown*, No. 6:20-CV-475-JCB (N.D. Tex. Feb. 11, 2021), ECF No. 21.

Accordingly, the individual Defendants' Motion to Dismiss (ECF No. 8) is **GRANTED**.

**SO ORDERED.**

July __7__, 2021.

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE