IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 8 2023

CLERK, U.S. DISTRICT COURT
By_____
                                    Deputy

SIMON GARCIA, *et al.*,

      Plaintiffs,

v.

SWIFT BEEF COMPANY, *et al.*,

      Defendants.

2:20-CV-263-Z-BR

## ORDER

Back before the Court is Plaintiff's Motion to Remand (ECF No. 11), on reconsideration after review by the United States Court of Appeals for the Fifth Circuit. Because this Court lacks subject-matter jurisdiction, Plaintiffs' claims are hereby **REMANDED** to the **69th District Court, Moore County, Texas**.

### BACKGROUND

Plaintiffs were employees of Defendant Swift Beef Company ("Swift Beef"), a meatpacking plant located in Cactus, Texas during the first half of 2020. ECF No. 1-16 ("First Amended Petition") at 4–5. As the COVID-19 pandemic swept across the United States, many states, including Texas, began to implement precautionary measures to slow the spread of the virus. *Id.* at 5–6. Effective April 2, 2020, Texas Governor Greg Abbott issued Executive Order GA-14 (the "stay-at-home order" or "Executive Order GA-14").[1] But Plaintiffs allege they were required to continue to work at Swift Beef's meatpacking plant in contravention of the stay-at-home order.

---

[1] Office of Governor Greg Abbott, Executive Order GA-14 (Mar. 31, 2020), https://gov.texas.gov/uploads/files/press/EO-GA-14_Statewide_Essential_Services_and_Activity_COVID-19_IMAGE_03-31-2020.pdf.

ECF No. 1-16 at 6. Plaintiffs also allege that Swift Beef did not provide adequate precautions or protections for its employees. *Id.*

While working at the plant, Plaintiffs allege that they were exposed to and contracted COVID-19 — both before and after Governor Abbott's order. *Id.* at 4–5. Asserting claims for negligence and gross negligence, Plaintiffs brought suit in Texas state court, initially naming Manny Guerrero (the complex General Manager), Ashley Henning (Safety Manager), Jacob Montoya (Plant Engineer), and Donna Estrada (Technical Services Manager and Head of Quality Assurance) as Defendants (together "Individual Defendants"). *Id.* at 4. Plaintiffs allege these individuals "failed to fulfill their job dut[ies] to provide a safe working environment to Plaintiffs." *Id.* at 7. Plaintiffs amended their state petition to include Swift Beef as a Defendant. *Id.* at 3–4.

On November 11, 2020, Defendants timely removed the case to this Court asserting three jurisdictional theories: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331(a)(1) because "an essential question is embedded in Plaintiffs' claims" regarding the Defense Production Act ("DPA"); (2) federal officer removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1); and (3) complete diversity pursuant to 28 U.S.C. § 1332, as the Individual Defendants were fraudulently joined to defeat diversity. ECF No. 1 at 4, 9, 16, and 17. On December 8, 2020, Plaintiffs filed their Motion to Remand this case back to the 69th District Court, Moore County, Texas. ECF No. 11. The Court denied remand, finding the federal officer removal statute applicable. ECF No. 41. The Court subsequently granted Individual Defendants' Motion to Dismiss in the same order denying remand and Swift Beef's Motion to Dismiss. ECF Nos. 41, 58.

Next, the Fifth Circuit decided *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230 (5th Cir. 2022). *Glenn* held the federal officer removal doctrine did not provide the basis to remove state court actions like this one. *Id.* at 232, 237. Because "the facts of this case do not materially differ from

those in *Glenn*," the Fifth Circuit vacated this Court's orders dismissing Plaintiffs' claims and denying remand. ECF No. 65 at 2.

ANALYSIS

Title 28 U.S.C. § 1447(c) requires "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Because "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute," this Court must consider whether a basis for jurisdiction exists. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal marks omitted). The Court briefly addresses: (1) federal officer removal jurisdiction under 29 U.S.C. § 1442(a) before turning to the principal issues before the Court; (2) federal question jurisdiction under 28 U.S.C. § 1331; and (3) diversity jurisdiction under 28 U.S.C. § 1332(a). No basis for federal jurisdiction exists under any of the three.

A. **This Court lacks federal officer removal jurisdiction under § 1442(a)**

The Court first notes that it lacks federal officer removal jurisdiction in light of *Glenn*. That case, like this one, was removed by the defendant — Tyson — under federal officer removal jurisdiction. 40 F.4th at 232. But *Glenn* held that "Tyson received, at most, strong encouragement from the federal government. Tyson was never told that it ***must*** keep its facilities open." *Id.* (emphasis in original). Because "encouragement," "exhort[ation]," "suggestion," and "concern" do not rise to the level of "direction," "subjection, guidance, or control," federal officer removal jurisdiction was not triggered. *Id.* at 232, 234, and 237. Thus, there is no "jurisdiction over the employees' claims through the federal officer statute." ECF No. 65 at 3.

B. **This Court lacks federal question jurisdiction under § 1331**

Next, the Court finds that it lacks federal question jurisdiction. To begin, "[t]he arguments Defendants make in their removal papers as to federal question are similar to their federal officer

3

jurisdiction allegations . . . that Plaintiffs [sic] claims are directly related to federal directives and orders under the DPA." ECF No. 11 at 23. However, in light of *Glenn*'s holding that those "directives and orders" were not binding, the Court finds that any embedded federal issue does not rise to a level justifying federal jurisdiction pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

Generally, a state civil action brought where the United States district courts have original jurisdiction may be removed by defendants to the United States district court for the district and division embracing the place where the original suit pends. *See* 28 U.S.C. § 1441(a). And because federal courts are courts of limited jurisdiction, the removal statute is subject to strict construction. *See Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986) ("Determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system"); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *Moody v. Lake Worth Invs. Inc.*, 2021 WL 4134414, at *2 (N.D. Tex. May 26, 2021).

Article III, Section 2 of the United States Constitution provides, "[t]he judicial power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." That clause is not self-executing. Instead, Article III, Section 2 defines the maximum reach — a limitation — of the federal judicial power that Congress may confer. Unsurprisingly, "any doubt about propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007); *Cross v. Bankers Multiple Line Ins. Co.*, 810 F. Supp. 748, 750 (N.D. Tex. 1992). "Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action, [the Supreme Court] has long construed

the statutory grant of federal-question jurisdiction as conferring a more limited power." *Merrell Dow Pharms.*, 478 U.S. at 807 (cleaned-up).

"Generally, a case arises under federal law only where a federal question is presented on the face of a well-pleaded complaint, that is, a complaint that asserts the plaintiffs' right to recovery based on federal law." *La. Ind. Pharmacies Ass'n v. Express Scripts, Inc.*, 41 F.4th 473, 478 (5th Cir. 2022). And ordinarily, a federal defense is inadequate to confer federal jurisdiction.[2] *See Merrell Dow Pharms.*, 478 U.S. at 808 (citing *Franchise Tax Bd. v. Constr. Lab. Vacation Tr.*, 463 U.S. 1, 9–10 (1983); *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 153 (1908)). The only role federal guidance could play in this case is as a defense, a minimum safety requirement that Swift Beef may or may not have satisfied. But "[a] federal defense is inadequate to confer jurisdiction." *Merrell Dow Pharms.*, 478 U.S. at 808 (citing *Franchise Tax Bd.*, 463 U.S. at 9–10; *Mottley*, 211 U.S. at 153).

Exceptions aside (*e.g.*, complete preemption and declaratory judgments, both inapplicable here), there are two ways by which a plaintiff's claim arises under federal law. First, when federal law "creates the cause of action." *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257 (1916). And second, when a state-created cause of action sufficiently "depends upon" an embedded federal issue. *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921); *see also Osborn v. Bank of U.S.*, 22 U.S. 738, 822 (A federal question "forms an ingredient of the original cause"); *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) (the modern test).

In this case, Plaintiffs' claims are straightforward: state law negligence and gross negligence. ECF No. 1-16 at 3. Plaintiffs specifically disavow reliance on federal law. *See id.*

---

[2] The federal officer removal doctrine is an obvious exception — removal based on an affirmative defense. As previously addressed, that doctrine is inapplicable here.

("Plaintiffs have not made any federal claims."). Nevertheless, Swift Beef contends that Plaintiffs' right to relief under state law necessarily "turn[s] on" questions of "federal law." ECF No. 20 at 16; *Grable*, 527 U.S. at 431 (1999); *Parish of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362 (5th Cir. 2021).

### 1. Federal law does not create Plaintiffs' causes of action.

Federal question jurisdiction is raised "by and large by plaintiffs pleading a cause of action created by federal law (*e.g.*, claims under 42 U.S.C. § 1983)." *Grable*, 545 U.S. at 312. Here, Plaintiffs' pleading explicitly disclaims any federal cause of action. ECF 1-16 at 3; *see also Smith*, 255 U.S. at 199. Therefore, the Court must look to the second inquiry.

### 2. No embedded federal issue satisfies *Grable*.

The *Grable* doctrine determines whether an embedded federal issue in a state-created cause of action arises under federal law. "Federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised; (2) actually disputed; (3) substantial; and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Parish of Plaquemines*, 7 F.4th at 374 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* (internal marks omitted). "Only a special and small category of cases fit all four criteria." *Parish of Plaquemines*, 7 F.4th at 374. This is not one of those cases.

The Court determines that: (1) Plaintiffs' claims do not necessarily raise a stated federal issue; (2) even if a federal issue is necessarily raised, it is likely not substantial — and "any doubt

about propriety of removal must be resolved in favor of remand." *Gasch*, 491 F.3d at 281–82; *Cross*, 810 F. Supp. at 750. Accordingly, there is no federal question jurisdiction in this case.

a. Plaintiffs' claims do not necessarily raise a stated federal issue

Plaintiffs' claims do not necessarily raise a stated federal issue for three reasons. First, Swift Beef was not subject to any federal directive, order, law, or mandate. Second, Swift Beef cannot rely on the mere possibility that it *might* have been subject to such federal authority. Third, any directive, order, law, or mandate was non-binding federal guidance adopted by the State of Texas, rendering such authorities state rather than federal questions.

*i. Nonbinding guidance does not necessarily raise a federal issue.*

The analysis underlying *Glenn* is dispositive to the first *Grable* factor. In light of *Glenn*, this Court finds Swift Beef was *not* operating under federal guidance. Importantly, a "nebulous" reference to a nonbinding federal guidance is insufficient to bestow jurisdiction. *See Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 692 (5th Cir. 1995). According to *Glenn*, [the meat processing facility] was never told that it *must* keep its facilities open." 40 F.4th at 232 (emphasis in original); *see also* ECF No. 65. Thus, it was not bound by any federal authority. *Glenn*, 40 F.4th at 233 ("This federal guidance was not binding."). Instead, the federal government issued mere *guidance* in the form of "encouragement," "exhort[ation]," "suggestion," and "concern" — not "direction," "subjection, guidance,[3] or control." *Id.* at 232, 234, and 237.

Comparing the *Glenn* framework to Swift Beef's arguments evinces the difference. Swift Beef argues the conduct on which Plaintiffs sue was "*governed*" and "*mandated*" by "federal *law*,"

---

[3] *Glenn* uses the word "guidance" twelve times. Eleven clearly indicate it was "nonbinding." *See, e.g.*, 40 F.4th at 235 ("guidance . . . was nonbinding" and "not mandatory"). This one use must be read differently. The trio "subjection, guidance, or control" is sourced from the definition of "under" as in "acting *under* a federal officer or agency." *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 151–52 (2007) (emphasis added). This use should not cause confusion; here, guidance means direction. In every other use, and as it is used in this Order, guidance means advice — and the recipient can take it or leave it.

"*regulations*," "*order[s]*," "*guidelines*," and "*directives*" backed by "national enforcement" to "enjoin[] meat processors" to remain operation. ECF No. 1 at 6–8. And Plaintiffs' claims, according to Swift Beef, necessarily require "a determination of . . . federal issues" to ascertain whether Swift Beef was subject to federal guidance and whether Swift Beef should have complied or deviated from it. *Id.* at 9; ECF No. 20 at 10. While Swift Beef argues "operation under federal direction is . . . directly related to Plaintiffs' claim of workplace injuries," there was no federal "direction" under which it was operating. ECF NO. 20 at 21; *but see Glenn*, 40 F.4th at 232 (Defendant "cannot transmogrify suggestion and concern into *direction* and *control*.") (emphasis added); *see also id.* at 233–34 (USDA's website reiterated that processing plants *should* utilize CDC/OSHA guidance, but that guidance was *not mandatory*) (emphasis added). Swift Beef cannot assert removal on federal question jurisdiction based on the same argument that was rejected by the Fifth Circuit vis-à-vis federal officer removal jurisdiction — that it operated under the effective control of federal guidance when said guidance was not binding.

### ii. The mere possibility that federal authority could have been applied is too attenuated.

Similarly, Swift Beef cannot assert federal question jurisdiction on the mere possibility that federal authority *might* have been exercised to *maybe* require that it remain open. *See Merrell Dow Pharms.*, 478 U.S. at 813 ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."); *see also Glenn*, 40 F.4th at 234 ("[T]he USDA's website reiterated that . . . the agency was leaving the door open to further action under the DPA *if* it became necessary." (emphasis added)). Even if Swift Beef ceased work and thereby triggered the delegated authority, there is no guarantee that authority would have actually been exercised because enforcement under the DPA was committed to the Secretary of Agriculture's discretion. Executive Order No. 13917, Section 2 ("The Secretary of Agriculture shall use [DPA

8

authority] . . . as he deems appropriate" and "as may be necessary."). Whether the Secretary of Agriculture would have deemed it "appropriate" and "necessary" to force Swift Beef to reopen is unknowable and unanswerable by this Court (and likely any other). Therefore, Swift Beef's posited federal question is too attenuated — merely a remote possibility. Thus, it is not necessarily raised by Plaintiffs' lawsuit.

While not determinative, hindsight is informative. The authority delegated by the DPA was never exercised — "[t]he USDA did not issue a DPA order to Tyson or any other meatpacking company" — because the trigger event never occurred. *Glenn*, 40 F.4th at 233–34 (noting then-President Trump's tweet that the "Defense Production Act is in full force, but haven't had to use it because no one has said NO!"). With no point of reference for how the Secretary of Agriculture might have exercised discretion, this Court will not undertake a hypothetical speculation as to what he would have done.

### iii. Any authority binding Swift Beef was authority of the State of Texas.

While "federal guidance was not binding" on Swift Beef, "the State of Texas apparently agreed with the federal government's preference that companies like Swift Beef should continue operating." *Id.* at 232. If any federal guidance was effectuated as a directive on Swift Beef, it was therefore a directive of the State of Texas and not the United States government. Throughout the pandemic, "[s]tate and local authorities remained the ultimate decisionmakers on public safety matters," even when those decisions conflicted with federal guidelines. *Id.* at 235; *compare* Office of Governor Abbott, Executive Order GA-38 (July 29, 2021) (prohibiting mask mandates in Texas public schools and universities)[4] *and* Office of Governor DeSantis, Executive Order Number 21-

---

[4] Office of Governor Greg Abbott, Executive Order GA-38 (July 29, 2021),
https://gov.texas.gov/uploads/files/press/EO-GA-38_continued_response_to_the_COVID-19_disaster_IMAGE_07-29-2021.pdf.

175 (July 30, 2021) (entrusting to parents the decision whether their children should wear masks in school)[5] *with* CDC Interim Public Health Recommendations for Fully Vaccinated People (July 28, 2021) (recommending "universal indoor masking" in schools).[6] Texas GA-38 and Florida Executive Order Number 21-175 trumped the more restrictive federal guidance.

That was the whole point — equipping the states and their local authorities. The federal government created the "list of 'Essential Critical Infrastructure Workers' *to help State and local officials* as they work to protect their communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." *Glenn*, 40 F.4th at 235. "Guidance from the White House was to the same effect, instructing Americans to 'listen to and follow the directions of your state and local authorities.'" *Id.* (cleaned-up). It is therefore not surprising that Governor Abbott's stay-at-home order defined "essential services" to include "everything listed by the U.S. Department of Homeland Security in its Guidance on the Essential Critical Infrastructure Workforce, Version 2.0" ("Infrastructure Guidance, Version 2.0"). *See* Executive Order GA-14, at 2. The U.S. Department of Homeland Security's Advisory Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response ("Advisory Memorandum") was issued on March 29, 2020, with Infrastructure Guidance, Version 2.0 attached.[7] Under the heading "Food and Agriculture," the Infrastructure Guidance, Version 2.0 identified as essential: "Food manufacturers and employees and their supplier employees — to include those employed in food ingredient production and processing

---

[5] Office of Governor Ron DeSantis, Executive Order Number 21-175 (July 30, 2021), https://www.flgov.com/wp-content/uploads/2021/07/Executive-Order-21-175.pdf.
[6] Center for Disease Control, "Interim Public Health Recommendations for Fully Vaccinated People" (July 28, 2021), https://www.cdc.gov/coronavirus/2019-ncov-vaccines/fully-vaccinated-guidance.html.
[7] Cybersecurity & Infrastructure Sec. Agency, Advisory Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, Version 2.0 (March 29, 2020), https://www.cisa.gov/sites/default/files/publications/CISA_Guidance_on_the_Essential_Critical_Infrastructure_Workforce_Version_2.0_1.pdf.

facilities; livestock, poultry, seafood slaughter facilities; pet and animal feed processing facilities; human food facilities producing by-products for animal food; beverage production facilities; and the production of food packaging." Infrastructure Guidance, Version 2.0, at 4.

Executive Order GA-14 also advised essential services to "follow the Guidelines from the President and the CDC by practicing good hygiene, environmental cleanliness, and sanitation, implementing social distancing, and working from home if possible." *Id.* at 3. "[E]very person in Texas shall, except where necessary to provide or obtain essential services, minimize social gatherings and minimize in-person contact with people who are not in the same household," and "people and business should follow the Guidelines from the President and the CDC." *Id.* at 2.

Additionally, both Executive Order GA-14 and Infrastructure Guidance, Version 2.0 affirm that the only authority directing critical infrastructure and essential services — assuming Swift Beef qualifies as such — was state authority. Governor Abbott's order was expressly "subject to extension based on the status of COVID-19 in Texas *and the recommendations* of the CDC and the White House Coronavirus Task Force." Executive Order GA-14, at 2 (emphasis added). And the Advisory Memorandum instructs that it "should [not] be considered a federal directive[] or standard" and committed responsibility for implementing infrastructure and operational decisions to the "discretion" and "judgment" of "[i]ndividual jurisdictions" based on "concerns of particular jurisdictions." Advisory Memorandum, at 1.

Accordingly, the actual authority under which Swift Beef may have been operating was only that of Texas — the substance of which was appropriated from federal guidance. The issues raised by this case are better resolved by the capable courts of Texas because they are, properly understood, state questions. And therefore, because the essential questions of this case center on state rather than federal issues, no federal question is necessarily raised. *Grable*, 545 U.S. at 314.

11

b. Even if a federal issue is necessarily raised, it is not substantial

Plaintiffs' claims fail the third element of *Grable* because any federal issues regarding guidance are not "substantial." *Grable*, 545 at 312. "Federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (internal marks omitted). Here, the federal guidance to critical infrastructure, which the Fifth Circuit clarified amounted to "nonbinding . . . suggestion," is only part of the Plaintiffs' claims. *Glenn*, 40 F.4th at 323, 325. "*Grable* emphasized that it takes more than a federal element 'to open the arising under door.'" *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (internal marks omitted). Swift Beef's interpretation is too broad, as it swings wide the door for most state law tort claims against federally regulated private entities — without need (to continue *Grable*'s entryway metaphor) for a "key" or even a "welcome mat." *Grable*, 545 U.S. at 318–19.

In lieu of a bright-line rule for what qualifies as "substantial," the Supreme Court considers several factors: (1) that the case presents a nearly pure issue of law that would control many other cases rather than a fact-bound and situation-specific issue; (2) that the federal government has an important interest in the issue, especially if the case implicates a federal agency's ability to vindicate its rights in a federal forum; and (3) that the issue will be dispositive of the case. *Empire Healthchoice*, 547 at 700–01.

### i.   *The inquiry is situation-specific and will require extensive fact-finding.*

Far from a pure legal interpretive question, this case will involve application of federal health and safety guidance — as adopted by the State of Texas — to a situation specific to these parties. Whether that guidance was sufficient for the infrastructure, capacity, and workplace

dynamics of Swift Beef is a fact-bound issue and does not necessitate "the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312.

### ii. The federal government does not have an important interest in the issue.

As to the second factor, the federal government has little to no interest in this case, let alone an interest implicating a federal agency. Plaintiffs have not challenged the actions of a federal agency, no federal agency is a party to this case, and the Fifth Circuit has now held that the relevant federal guidance is non-binding — thus, no administrative actions of a federal agency are at issue in this case. *Empire Healthchoice*, 547 U.S. at 700 (lacking federal question jurisdiction and distinguished from *Grable* because "the dispute [in *Grable*] centered on the action of a federal agency (IRS) and its compatibility with a federal statute . . . and its resolution was both dispositive of the case and would be controlling in numerous other cases"). At most, Plaintiffs allege federal guidance was a floor, which Swift Beef should have exceeded. They do not challenge the guidance's validity or verity.

### iii. Whether federal guidance bound Swift Beef is not dispositive of Plaintiffs' claims.

For the third factor, the Court considers whether the federal question is "dispositive of the case." *Id.* "The bar for 'dispositive' is high." *Vega v. InterLinc Mortgage Servs., LLC*, 2020 WL 12918036, at *7 (W.D. Tex. Sept. 18, 2020). *Vega* notes that other circuits require the plaintiff to "automatically prevail if a court found in his favor on the federal issue." *Id.* (citing *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 571 (6th Cir. 2007) (en banc); *Adventure Outdoors v. Bloomberg*, 552 F.3d 1290, 1301 (11th Cir. 2008)). In this case, the embedded federal question is not dispositive because Plaintiffs' claims are still incomplete even if they prevail on the federal question. Plaintiffs still must prove several elements — *e.g.*, causation, inadequacy of any

13

precautions Swift Beef undertook, Swift Beef's knowledge, and those enhancements essential to gross negligence. *See* ECF No. 50 at 11–14.

For the aforementioned reasons, the federal issue alleged in this case is not "substantial," so exercising federal jurisdiction over the state law claims "would considerably intrude on state authority." *Singh*, 538 F.3d at 340; *Grable*, 545 U.S. at 312; *Empire Healthchoice*, 547 U.S. at 700–01. Moreover, if the nonbinding federal recommendations were adopted and made binding by Texas, then the federal issue is even less intimate to Plaintiffs' claims than federal regulations — and intrusion on state authority would be even less warranted. *Singh*, 538 F.3d at 340. Therefore, the Court lacks federal question jurisdiction.

### C. **This Court lacks diversity jurisdiction under § 1332.**

Defendants alternatively assert that "complete diversity exists and the amount-in-controversy exceeds $75,000.00," even though Plaintiffs and Individual Defendants are all allegedly Texas citizens. ECF Nos. 1 at 16, 1-16 at 3. As an initial matter, the record is barren of proof of any Plaintiffs or Individual Defendants' citizenship. At this stage of the case, it would be appropriate to remand the case on that ground alone. Even setting that aside, Swift Beef has not met its fraudulent joinder burden. Defendants allege Plaintiffs fraudulently joined Individual Defendants to anchor their case in state court and avoid remand. *See* ECF No. 20 at 7. The Court finds that the Individual Defendants are not fraudulently joined and so the Court lacks jurisdiction under 28 U.S.C. § 1332.

### 1. **Complete diversity is not sufficiently alleged.**

Plaintiffs simply assert each "is a *resident* of Texas." ECF Nos. 1-16 at 3 (emphasis added). Swift Beef understands Plaintiffs to mean each "is a *citizen* of Texas." ECF 1 at 16 (emphasis added). Likewise, Plaintiffs simply assert each Individual Defendant "is a resident of Texas," and

14

Swift Beef does not protest. ECF No. 1-16 at 4. "The burden of pleading the diverse citizenship is upon the party invoking federal jurisdiction, and if the diversity jurisdiction is properly challenged, that party also bears the burden of proof." *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (citing *Cameron v. Hodges*, 127 U.S. 322 (1888)) (internal marks omitted). Neither party has met its burden.

Even more than 100 years ago, "it ha[d] long been settled that residence and citizenship were wholly different things . . . and that mere averment of residence in a particular state is not an averment of citizenship in that state for the purposes of jurisdiction." *Steigleder v. McQueston*, 198 U.S. 141, 143 (1905); *see also Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient."). Plaintiffs' state court pleadings not only violate *Steigleder* — they also do not put forth any facts supporting any individual's "true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom." *Perry*, 489 F.2d at 1399 (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)).

Swift Beef's translation of "resident" into "citizen," without more, is insufficient to meet the burden required to invoke federal jurisdiction based on diversity of citizenship. "It is essential, in cases where the jurisdiction depends upon the citizenship of the parties, that such citizenship, or the facts which in legal intendment constitute it, should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record. *It is not sufficient that jurisdiction may be inferred argumentatively from the averments.*" *Wolfe v. Hartford Life & Annuity Ins. Co.*, 148 U.S. 389, 389 (1893) (emphasis added).

While an appellate court *may* overlook concessions and assumptions, this Court does not. *See Realty Holding Co. v. Donaldson*, 268 U.S. 398, 399 (1925); *see also Seguin v. Remington*

*Arms Co., L.L.C.*, 22 F.4th 492 (5th Cir. 2022) (surveying appellate approaches to defective allegations in lower courts — usually amendment on remand or filed in the appellate court). The Supreme Court in *Donaldson* determined an allegation that "appellant is a Delaware corporation and appellee is a 'resident' of Michigan" was "not sufficient allegation of appellee's Michigan citizenship." 268 U.S. at 399. However, the Court also noted that: (1) appellee's citizenship was "conceded by appellee in the court below, as well as [at the Supreme Court]"; (2) the lower court "assumed the point"; and (3) "the defect may be cured by amendment." *Id.* at 400. Thus, the Supreme Court determined that "nothing [was] to be gained by sending the case back for that purpose," and so it "considere[ed] the amendment made and dispose[d] of the case." *Id.* This court does not interpret *Donaldson* to bestow license to "assume the point" where the pleading of citizenship is "not sufficient." *Id.* at 399–400.

Notwithstanding, amendment would be futile because the Court determines that the Individual Defendants are not fraudulently joined. Even if Plaintiffs and Individual Defendants are all citizens of Texas — as the parties allege — this Court would still remand. Moreover, an order granting a remand motion is not reviewable, by mandamus or appeal, if that order is colorably based on a lack of subject matter jurisdiction. *See* 28 U.S.C. § 1447(d); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996). "[Section] 1447(d) must be read *in pari materia* with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." *Quackenbush*, 517 U.S. at 711–12 (quoting *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 345–46 (1976), *abrogated by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)). The two "categor[ies] of remand order described in § 1447(c)" are "lack of subject matter jurisdiction [and] defects in removal procedure." *Id.* This Court remands for lack of

subject matter jurisdiction — finding no jurisdiction conferred because of federal officer removal, federal question, or diversity.

### 2. The Individual Defendants' presence in this case spoils complete diversity.

Taking Plaintiffs' and the Individual Defendants' citizenship as the parties allege, complete diversity only exists if the Individual Defendants are fraudulently joined. Swift Beef is incorporated in Delaware with its principal place of business in Colorado, so Swift Beef a citizen of both of those states. 28 U.S.C. § 1332(c)(1); *see* ECF Nos. 1 at 16 (noting state of incorporation and principal place of business); 1-16 at 3 (Plaintiffs averring Swift Beef "is a foreign corporation"). Plaintiffs are alleged to be citizens of Texas. ECF Nos. 1 at 16 (alleging each Plaintiff "is a citizen of Texas"), 1-16 at 3 (alleging each Plaintiff "is a resident of Texas"). Thus, as between Plaintiffs and Swift Beef only, complete diversity exists. However, complete diversity is spoiled because the Individual Defendants share Texas citizenship with Plaintiffs. *See* ECF Nos. 1 at 4 (arguing Individual Defendants "should be disregarded" and their citizenship not considered); 1-16 at 4 (alleging each Individual Defendant "is a resident of Texas").

### 3. The Individual Defendants are not fraudulently joined.

Swift Beef alleges "Plaintiffs fraudulently joined the Individual Defendants" to preemptively avoid remand and thereby "secure a state court venue."[8] ECF Nos. 1 at 17, 20 at 7

---

[8] Defendants seem to criticize Plaintiffs' litigation strategy. *See* ECF No. 20 at 7 ("Plaintiffs' motivation for taking this unusual action was revealed during the hearing . . . ."). But Plaintiffs just followed the playbook — join and serve the forum defendants *and then* amend to add the diverse defendant. It just so happens that defendants have a different playbook. The defense "tactic" is snap removal — which Plaintiffs' counsel "learned about very recently." ECF No. 20-2 at 19. Had Plaintiffs "properly joined" Swift Beef in its first petition, and had Defendants monitored for such a filing, then Swift Beef (and possibly an Individual Defendant) could have removed the case so long as no Individual Defendant had yet been "properly . . . served." *See* 28 U.S.C. § 1441(b)(2); *accord Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482 (5th Cir. 2020) (affirming snap removal by a *non-forum* defendant but not limiting its holding); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147 (3d Cir. 2018) (affirming snap removal by a *forum* defendant); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019) (same); *Latex Construction Co. v. Nexus gas Transmission, LLC*, 2020 WL 3962247 (S.D. Tex. July 13, 2020) (same); *Baker v. Bell Textron, Inc.*, 2020 WL 5513431 (N.D. Tex. Sept. 14, 2020) (affirming snap removal by a *forum* defendant when all defendants are forum defendants). And lastly, the Court notes that snap removal — like the join-serve-and-amend tactic — is just as possible "out here in the west" as it is "in the larger metropolitan areas." ECF No. 20-2 at 19.

17

(internal marks omitted). Swift Beef also believes it is the "true defendant" because Plaintiffs cannot establish a claim against the Individual Defendants. ECF No. 20 at 27. The Court finds the Individual Defendants are not fraudulently joined.

     a.  <u>Swift Beef's burden to establish fraudulent joinder is a heavy one</u>

As a threshold matter, the parties assert mismatched rule statements — Plaintiffs cite to *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir. 1981) (allegedly fraudulently joined defendants are properly joined "if there is *even a possibility*" of state-court recovery), and Defendants to *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305 (5th Cir. 2002) (joinder is proper if there is a "*reasonable* basis for predicting" state-court recovery). *See, e.g.*, ECF Nos. 11 at 25, 1 at 17. Defendants are correct in their pronouncement of the rule.

Although "earlier fraudulent joinder cases had been uncertain as to whether a removing defendant must demonstrate an absence of *any possibility* of recovery in state court, we clarified . . . that the defendant must demonstrate only that there is no *reasonable* basis for predicting that the plaintiff will recover in state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) (emphasis in original). "[T]he crucial question is whether the plaintiff has set out a valid claim under applicable state law." *Id.* "Critically, all disputed questions of fact and all ambiguities in state law must be resolved in favor of the plaintiff." *Id.* (citing *Great Plains Tr. Co.*, 313 F.3d at 312). "Further, the plaintiff may not rely solely on the allegations in his complaint; the court may 'pierce the pleadings' and consider summary judgment-type evidence to determine whether the plaintiff has a reasonable possibility of recovery in state court." *Id.* To avoid remand, Defendants must "meet their heavy burden of showing that there is no reasonable possibility that plaintiffs can recover in state court." *Id.* at 408. They have not.

   b.  Texas state law does not foreclose a reasonable basis to predict recovery

Defendants rely upon *Leitch v. Hornsby* that "a corporate officer acting on the corporation's behalf does not owe a corporate employee an individual duty to provide that employee with a safe work place." 935 S.W.2d at 118. That is quite clearly Texas law. But, Plaintiffs are correct that *Leitch* "does not hold that employees can *never* be held liable." ECF No. 20-2 at 18 (emphasis added). This Court is aware of no Texas case adjudicating whether an employee owes an independent duty to his coworkers when he knows others, or even himself, to be COVID-positive and contagious. Where "[state] law is, at a minimum, ambiguous, there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Gray*, 390 F.3d at 402 (internal marks omitted).

Insofar as Plaintiffs' allege breach of the duty "to provide a safe place of work," such a claim is foreclosed as Swift Beef's exclusive and nondelegable duty as Plaintiffs' employer. Consider Plaintiffs' arguments:

- *Swift Beef* failed to take adequate precautions to protect its employees from COVID-19 risks. ECF No. 1-16 at 6. (emphasis added).

- Individual Defendants *held positions* that necessarily placed a duty on them to implement policies and practices to prevent the spread of COVID-19. ECF No. 15 at 7 (emphasis added).

- Individual Defendants failed to fulfill their *job duties*. *Id.* (emphasis added).

- Individual Defendants failed to fulfill their duty *to provide a safe working environment to Plaintiffs*. ECF No. 1-16 at 7 (emphasis added).

- *Swift Beef's conduct, effectuated through* Individual Defendants was negligent and grossly negligent and was the cause of the underlying incidents and injuries. *Id.* (emphasis added).

Indeed, a large portion of Plaintiffs' claims against the Individual Defendants are encompassed by the nondelegable duty of the employer, and *Leitch* controls them. *See* 935 S.W.2d

at 118. (employees' actions "within their capacities as officers . . . and not in their individual capacities . . . whether active or passive, were actions of a corporate officer on behalf of" the corporation). But not every claim is clearly encompassed by Swift Beef's nondelegable duty. So, "[t]his case is a tad different." *Wallace v. Ind. Tank Cleaning Servs., LLC*, 2023 WL 2568917, at *4 (S.D. Tex. March 13, 2023). Specifically, Plaintiffs allege that Individual Defendants "[a]llowed and required individuals who were infected with COVID-19 to continue to work at the meatpacking plant infecting other individuals." ECF No. 1-16 at 8.

*Wallace* is an instructive and recent example of how *Leitch* may not extend as far as Swift Beef suggests. In *Wallace*, an employee was injured because of allegedly deficient safety equipment. 2023 WL 2568917, at *3. The plaintiff alleged that his supervisors "knew full well that the equipment needed to safely complete the [work] was either unavailable or in a state of disrepair," and his supervisors even "pressured [the plaintiff] to 'hurry' while working in order to 'rush' completion of the assignment." *Id.*, at *1, *3 (internal marks omitted). The plaintiff averred that the supervisors: (1) "knew of *specific deficiencies* in existing safety equipment"; (2) "*refused to take steps to remedy* the problem"; and (3) "*pressured*" the plaintiff to engage in an unsafe practice. *Id.* (emphasis added). The court declined to apply *Leitch* in the way the defendants — and the Swift Beef in this case — would. The court reasoned that the plaintiff "ha[d] some possibility, under Texas law, of recovering against the [supervisors] individually . . . because the [supervisors] can be held individually liable if, in fact, they *created a dangerous condition and then did nothing to remedy the situation.*" *Id.* (emphasis added). The same may be said of the Individual Defendants here.

Instead of merely claiming that the Individual Defendants violated a general duty to provide Plaintiffs with a safe workplace, Plaintiffs aver that the Individual Defendants violated a

20

more particular duty. According to Plaintiffs, Individual Defendants (1) "had specific knowledge" of "sick individuals" returning to work; (2) "then refused to take steps to remedy that problem"; and (3) even "pressured" those sick employees to report to work and, moreover, work in close proximity to Plaintiffs. *See Wallace*, 2023 WL 2568917, at *3; *see also* ECF No. 20-2 at 18. "Defendants had specific knowledge of, as well as require[ed], the Plaintiffs and sick individuals to come back in." ECF No. 20-2 at 18. Plaintiffs, in other words, seek to "saddle *independent* tort liability" on the managers and supervisors of the Cactus, Texas processing facility for "create[ing] a dangerous condition and then [doing] nothing to remedy the situation." *Gray*, 390 F.3d at 409 (emphasis added); *Wallace*, 2023 WL 2568917, at *3.

Both sides concede that "individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty" as held by *Leitch. See, e.g.*, ECF No. 20 at 30 (Defendant citing *Leitch*); ECF No. 20-2 at 17 (Plaintiffs attempting to distinguish their claims from the *Leitch* framework). But "[e]mployees can be individually liable when they directly create the dangerous conditions that cause the injury" and "then did nothing to remedy the situation." *Wallace*, 2023 WL 2568917, at *3.[9]

Plaintiffs have thus alleged that Individual Defendants negligently pressured — or even required — employees they knew to be COVID-positive to return to work, and thereby "created a dangerous condition and then did nothing to remedy the situation," which is analogous to *Wallace*. And Texas law is not settled as to COVID transmission liability — including duty and scienter.

---

[9] The Court acknowledges footnote 4 in its order signed July 7, 2021. *See* ECF No. 41 at 12. In response to Swift Beef's allegation of fraudulent joinder, "[t]he Court [was] inclined to agree." *Id.* But that note was in the context of the Court (1) finding the federal officer removal statute applicable, so "there [was] no need to determine if the individual defendants were improperly joined," and (2) dismissing the Individual Defendants under Rule 12(b)(6) analysis. *Id.* However, having now squarely confronted the issue vis-à-vis Rule 12(b)(1) and 28 U.S.C. § 1447(c), and having given due consideration to the facts, pleadings, and law, the Court is no longer "inclined to agree."

Therefore, Swift Beef has not "demonstrated that that there is no reasonable basis for predicting that the plaintiff will recover in state court" against Individual Defendants. *Gray*, 390 F.3d at 405.

    c.   The state court's denial of Defendants' 91a motion is significant

This Court finds it significant that a state court judge *denied* Defendants' Rule 91a motion to dismiss on exactly these claims, based on exactly the same arguments. *See* ECF No. 1-10 at 4–8. Defendants argued "Plaintiffs' claims should therefore be dismissed under Rule 91a because the employee Defendants have no duty to provide a safe workplace and Plaintiffs' claims therefore have no basis in law." *Id.* at 8 (citing TEX. R. CIV. P. 91a.1). The state court considered the Rule 91a motion and determined it should be denied. ECF No. 1-15 at 2.

The court interpreted *Leitch* to permit recovery "if the employee breaches a duty of care which he owes independent from the employer's duty of care," and "Plaintiff's petition includes viable causes of action based on independent duties of care." *Id.* While the state court's determination does not bind this Court, that a state court judge determined Plaintiffs' actions "viable" is persuasive that there is a "reasonable basis for predicting that the plaintiff will recover in state court." *Gray*, 390 F.3d at 405. "[A]ny doubt about propriety of removal must be resolved in favor of remand." *Gasch*, 491 F.3d at 281–82; *Cross*, 810 F. Supp. at 750. The Court's doubt must therefore be resolved in favor of remand.

    **CONCLUSION**

For the foregoing reasons, the Court **FINDS** that it lacks subject matter jurisdiction over this case. The Court **ORDERS** that the case should be and is hereby **REMANDED** to the **69th District Court, Moore County, Texas**.

**SO ORDERED**.

April _18_, 2023

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE